UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

CHRISTOPHER MURPHY,

                                  Plaintiff,

                                                                     Case # 17-CV-6339-FPG

v.

                                                                      DECISION AND ORDER

ANDREW C. HUGHSON, et al.,

                                  Defendants.
─────────────────────────────────────

## INTRODUCTION

Plaintiff Christopher Murphy, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for constitutional violations allegedly arising out of police conduct following his arrest on June 5, 2014. In his Amended Complaint, Plaintiff alleges that (1) following his arrest on a bench warrant, City of Elmira Police Department Officers Defendants Andrew C. Hughson and Frank B. Hillman (collectively "Elmira Defendants") refused to accept cash bail from his girlfriend and transported him to the Chemung County Jail, where (2) Chemung County Deputy Sheriffs Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer, and David Strong (collectively "Chemung Defendants") strip searched Plaintiff and refused to timely release him on bail, in violation of the Fourth, Eighth, Ninth, and Fourteenth Amendments. ECF No. 7.

Currently before the Court are the Chemung Defendants' Motion for Summary Judgment, ECF No. 66, and the Elmira Defendants' Motion for Summary Judgment, ECF No. 67. Plaintiff opposes the motions, ECF No. 75, and Defendants replied, ECF Nos. 81-82. Plaintiff also filed a motion to defer ruling on the motions for summary judgment and allow Plaintiff to conduct additional discovery, pursuant to Federal Rule of Civil Procedure 56(d). ECF No. 96. Plaintiff provides no valid basis for conducting additional discovery at this juncture and Plaintiff's motion

is therefore DENIED. For the reasons that follow, Defendants' motions for summary judgment are GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted); *see also Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 13-14 (2d Cir. 2018) (summary order) (applying same standard to summary judgment motion in case of failure to hire due to national origin).

## BACKGROUND

The following facts are drawn from the parties' submissions related to the motions for summary judgment.[1] On June 5, 2014, Elmira City Police Department officers arrested Plaintiff at a bus stop pursuant to a bench warrant. ECF No. 66-1 ¶ 8. The same day, Plaintiff appeared

---

[1] Although Defendants filed statements of material facts, ECF Nos. 66-1 & 67-2, in accordance with L.R. Civ. P. 56(a), Plaintiff did not respond to each numbered paragraph, as the rule requires. Nevertheless, the Court will not deem Defendants' statements of material facts admitted and will instead read Plaintiff's responses and factual assertions liberally. *O'dell v. Bill*, No. 9:13-CV-1275 FJS/TWD, 2015 WL 710544, at *24 n.3 (N.D.N.Y. Feb. 18, 2015) ("Although plaintiff did not respond to defendants' Rule 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and reads plaintiff's responses liberally as he is *pro se*, and considers factual assertions made by plaintiff in his submissions to the Court as contesting defendants' statement of material undisputed facts, where his statements or evidence conflict.").

2

before Elmira City Court Judge Steven W. Forest for the offense of "Structure Unfit For Human Occupancy in violation of Chapter 1 Section 107.1.3 of the NYS Property Maintenance Code." *Id.* ¶¶ 9-10. Judge Forest set bail at $750.00 and ordered that Plaintiff appear in court at 1:00 p.m. later that day. *Id.* ¶ 10. Specifically, Judge Forest remanded Plaintiff to the custody of the Chemung County Sheriff's Office "until his appearance in Court is required as set forth above or until bail is posted in the amount of $750.00 CASH or $1,500.00 SURETY BOND." *Id.* ¶ 11; ECF No. 66-3 at 2.

After the hearing, Elmira City Police officers moved Plaintiff to another room, where he was held for 15 minutes to a half hour. ECF No. 66-1 ¶ 12. During that time, Plaintiff's girlfriend, Barbara Camilli, asked to post bail on Plaintiff's behalf but the Elmira Defendants denied her request and told her that she would need to post bail at the Chemung County Jail. *Id.* ¶ 13; ECF No. 7 ¶ 27.

Plaintiff was then transported to the Chemung County Jail. ECF No. 66-1 ¶ 14. According to Plaintiff, Camilli, who arrived at the Chemung County Jail before Plaintiff, posted and paid the $750 bail. *Id.* ¶ 17. Upon his arrival at the Chemung County Jail, Plaintiff was placed in a holding cell with handcuffs for about five minutes. *Id.* ¶ 18. Defendant Gunderman and Defendant Washburn were present. *Id.* ¶ 19.

Defendant Gunderman fingerprinted Plaintiff, took his photograph, and told him that he would be "cut loose" since his girlfriend had paid his bail and was making a fuss. *Id.* ¶¶ 22-23. After being booked, Plaintiff was placed in a holding cell with another male inmate for an hour and fifteen minutes. *Id.* ¶ 24. Plaintiff was taken from that holding cell to another smaller room where he claims he was strip searched by Defendant Washburn. *Id.* ¶ 25. Defendant Washburn maintains that he did not conduct the strip search, but merely documented that the strip search

3

occurred. *Id.* n.1. The Chemung County Sheriff's Office Admissions Policy for Admitting Inmates into the Facility provides that inmates may be strip searched based on reasonable suspicion. *Id.* ¶ 26. The Strip Search Justification Sheet here indicates that a lieutenant or sergeant directed that Plaintiff be strip searched. *Id.* ¶ 27.

The strip search lasted about ten minutes. *Id.* ¶ 28. During the search, Plaintiff asked when he would be released but did not receive an answer. *Id.* ¶ 29. Plaintiff also asked Defendant Washburn about his bail, to which Defendant Washburn said to Defendant Gunderman, "He's not going anywhere. We're not done with him yet," and to Plaintiff, "He's going to sit in my jail for a while." *Id.* ¶ 30. According to Plaintiff, at some point after the strip search, Defendant Washburn made a crude gesture, referring to Plaintiff's genitals. *Id.* ¶ 33. After the search, Plaintiff was taken back to the holding cell with the other inmate for five to ten minutes. *Id.* ¶ 31.

Plaintiff was then removed from the holding cell to answer questions from two Sheriff's Deputies, one of whom entered the information into the computer. *Id.* ¶ 35. This questioning lasted about ten or fifteen minutes, and then Plaintiff asked about bail and was released. *Id.* ¶¶ 35-37. Plaintiff believes he was released at that time because it was close to his 1:00 p.m. court appearance. Plaintiff did not identify that Defendants Howe, Spencer, or Strong had any personal involvement in his booking.

## DISCUSSION

### I. There is No Issue of Material Fact as to the Personal Involvement of Defendants Holve, Spencer, Strong, and Gunderman

Defendants Holve, Spencer, Strong, and Gunderman contend that they cannot be found personally liable in this case and are entitled to summary judgment because they were not personally involved in any alleged constitutional violation. "Personal involvement is a prerequisite for the assessment of damages in a § 1983 action." *Livingston v. Escrow*, No. 08-CV-6576-FPG,

4

2013 WL 5603870, at *6 (W.D.N.Y. Oct. 11, 2013); *see Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke,* 449 F.3d 496, 501 (2d Cir. 1994). It is not enough to assert that the defendant is a link in the . . . chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

Even viewing the facts in the light most favorable to Plaintiff, he has failed to establish evidence on which the jury could reasonably find for him regarding the personal involvement of Defendants Holve, Spencer, Strong, and Gunderman. There are no facts before the Court showing that Defendants Holve, Spencer, and Strong were involved in the bail or booking process of which Plaintiff complains, let alone that they were personally involved in any alleged constitutional deprivation. Similarly, although it appears Defendant Gunderman fingerprinted and booked Plaintiff and told him that his bail was outside, Plaintiff does not allege that any of those acts violated any of his constitutional rights. In fact, Plaintiff admitted at his deposition that Defendant Gunderman was "decent," "civil," and "nice." ECF No. 66-4 at 43. There is simply no evidence before the Court to indicate that Gunderman was personally involved in any alleged constitutional violations. Accordingly, summary judgment is warranted with respect to Defendants Holve, Spencer, Strong, and Gunderman.

## II. There are no Facts to Establish that Plaintiff's Two-Hour Detention was Unconstitutional

Although Plaintiff does not explicitly assert that any of the Chemung Defendants personally caused the purported two-hour delay in his release on bail, he contends that such a delay

5

violates his constitutional rights. The Chemung Defendants argue that there are no issues of fact regarding the constitutionality of the delay. The Court agrees with the Chemung Defendants, but for different reasons than those they articulate.

The Chemung Defendants correctly assert that "prolonged post-arrest detention implicates the Fourth Amendment." *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 227 (W.D.N.Y. 2012) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007)). "A jurisdiction that releases the accused or 'provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein* [*v. Pugh,* 420 U.S. 103(1975)].'" *Id.* (quoting *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991)). This presumption of validity can be rebutted by evidence of unreasonable delay. *McLaughlin*, 500 U.S. at 56 ("Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."). Because the two-hour delay is well-below the 48-hour threshold and there is no evidence of unreasonable delay, the Chemung Defendants maintain that Plaintiff's two-hour detention was constitutional.

But *McLaughlin*, the case upon which the Chemung Defendants rely, is based on Fourth Amendment principles. There, the plaintiff had been held pending charges and without a finding of probable cause. The Supreme Court determined that holding an arrestee for 48-hours pending a probable cause determination was presumptively constitutional. "Under *McLaughlin*, detentions within 48 hours of arrest can nevertheless be unconstitutional if the plaintiff can demonstrate that the probable cause determination was delayed unreasonably—whether due to a delay[ ] for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Lynch v. City of New York*, 335 F. Supp. 3d

6

645, 655 (S.D.N.Y. 2018) (quoting another source).  Here, however, Plaintiff was held following his arrest on a bench warrant and his bail had been paid; there is no allegation concerning the probable cause to arrest Plaintiff.

*Lynch* addressed an analogous situation to the circumstances present here.  There, the Southern District of New York held that the 48-hour presumption of validity as articulated in *McLaughlin* did not apply to situations where, as here, a pre-trial detainee's bail has been paid. *Lynch*, 335 F. Supp. 3d at 656 (S.D.N.Y. 2018) (declining to apply *McLaughlin* in a motion to dismiss where pre-trial detainees suffered over 18 hours of detention following posting of bail so that a critical mass of detainees could be released at the same time).  Instead, the *Lynch* court analyzed the plaintiffs' claims under a substantive due process framework.

Here, however, even if the allegations are viewed under a substantive due process analysis, as *Lynch* suggests, the less than two-hour delay while officers processed Plaintiff does not rise to the level of conduct that "shocks the conscience," as required to establish a substantive due process violation.  *Id.* at 654; *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).  "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor*, 426 F.3d at 203.

Plaintiff's belief that the Chemung Defendants should have accepted bail and released him immediately upon his arrival at the Chemung County Jail does not make the two-hour delay to process Plaintiff rise to the level of a constitutional violation.  It is undisputed that the Chemung Defendants could not release Plaintiff until the fingerprinting and booking process was complete. ECF No. 66-1 ¶ 45.  Under these circumstances, the fingerprinting and booking process justifies the brief detention.

Accordingly, the Chemung Defendants are entitled to summary judgment with respect to Plaintiff's claims regarding the delay in his release.

### III. There are no Facts That Suggest That the Strip Search was Unconstitutional

#### A. Defendant Washburn's Personal Involvement

The parties disagree as to whether Defendant Washburn performed the strip search of Plaintiff. Defendant Washburn maintains that he did not perform the strip search, but merely *documented* that the strip search was performed. ECF No. 66-1 ¶ 25; ECF No. 66-4 at 44; ECF No. 66-7 ¶¶ 11-19. Even assuming Defendant Washburn performed the strip search, such a strip search does not violate the constitution.

With respect to strip searches, the Supreme Court has held that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012). "[W]hether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of correctional officials." *Id.* (quoting another source). As a result, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* (quoting another source).

Here, the Chemung County Sheriff's Office's Admitting of Inmates Into the Facility Policy states that "inmates that present a reasonable suspicion for being strip-searched will be strip-searched. All other new admissions that do not meet these criteria will be pat searched only." ECF No. 66-9 at 1. According to the "Strip Search Justification Sheet," Plaintiff was strip searched

8

"per Post 1," ECF No. 66-8 at 2, which means that the search was conducted at the direction of a supervising officer. ECF No. 66-1 at ¶ 27.

Although the Justification Sheet does not reveal any specific reasonable suspicion to justify the strip search, *Florence* does not require it. Rather, *Florence* requires courts to defer to corrections officials absent "substantial evidence in the record" to show that the officials have "exaggerated their response." 566 U.S. at 328 (strip search permissible where plaintiff was arrested pursuant to a bench warrant and was held in general population with other inmates). There is no such evidence here. A superior officer directed the strip search of Plaintiff, who was held with another detainee, and the search only lasted ten minutes.

### B. Defendant Washburn is Entitled to Qualified Immunity

Even if Defendant Washburn conducted an unconstitutional strip search, he is entitled to qualified immunity.

"The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). However, an "officer is not entitled to qualified immunity if no officer of reasonable

9

competence could have made the same choice in similar circumstances." *Id*. (quoting *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)). Thus, Defendant Washburn is entitled to qualified immunity as to the strip search "as long as [his] actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

Even assuming Defendant Washburn conducted the strip search—which he denies—there is no question that an officer of reasonable competence would have thought that conducting a strip search of a new inmate at the direction of a superior was constitutional. *Vasquez v. Maloney*, 990 F.3d 232, 241 (2d Cir. 2021) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists."). Accordingly, Defendant Washburn is entitled to qualified immunity with respect to this particular claim.

## IV. The Elmira Defendants are Entitled to Summary Judgment

The Elmira Defendants argue that they did not violate Plaintiff's constitutional rights by refusing to accept his cash bail. The Court agrees.

New York's cash bail law requires that, "at any time after the principal has been committed to the custody of the sheriff," cash bail be deposited with "(a) the county treasurer of the county in which the criminal action or proceeding is pending or, in the city of New York with the commissioner of finance, or (b) the court which issued such order, or (c) the sheriff in whose custody the principal has been committed." N.Y. Crim. Proc. Law § 520.15. "Upon proof of the deposit of the designated amount the principal must be forthwith released from custody." *Id.*

10

Here, Judge Forrest executed a securing order for Plaintiff, which remanded Plaintiff to the custody of the Chemung County Sheriff and set bail at $750. At that point, the Elmira Defendants, not being a county treasurer, the court, or sheriff, had no authority to accept Plaintiff's cash bail.

Even if the Elmira Defendants violated Plaintiff's constitutional rights, they are entitled to qualified immunity. First, the Elmira Defendants did not violate any "clearly established" right, since there is no constitutional right that cash bail be accepted by all law enforcement officers. Second, the Elmira Defendants, in good faith, followed the procedures set forth in N.Y. Crim. Proc. Law § 520.15 when they denied Plaintiff's cash bail because he had been remanded to the custody of the Sheriff's Office. Accordingly, the Elmira Defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Chemung Defendants' Motion for Summary Judgment, ECF No. 66, is GRANTED, and Elmira Defendants' Motion for Summary Judgment, ECF No. 67, is GRANTED. Plaintiff's motion for additional discovery, ECF No. 96, is DENIED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 9, 2021
      Rochester, New York

                                                HON. FRANK P. GERACI, JR.
                                                United States District Judge
                                                Western District of New York