# 21-2998

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

Christopher M. Murphy,

*Plaintiff-Appellant*

-v-

Andrew C. Hughson, Frank B. Hillman, Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer, Correctional Officer David Strong,

*Defendants-Appellees*

County of Chemung, City of Elmira, John Doe, being Individuals Number 1-5, Employed as Police Officers by the City of Elmira, and Sheriffs by the County Sheriff's Department, whose actual names and identities are unknown at this time,

*Defendants*

_____

On Appeal from the United States District Court
for the Western District of New York

## BRIEF FOR PLAINTIFF-APPELLANT CHRISTOPHER MURPHY

Christopher M. Murphy

Plaintiff-Appellant, appearing ***pro se***

105 Geneva Street, Apartment 237

Bath, New York 14810

Telephone: (607) 664-6717

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

Statement of Subject Matter and Appellate Jurisdiction . . . . . . . . . . .   1

Statement of Issues Presented for Review . . . . . . . . . . . . . . . . . . . .   1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

## ARGUMENT

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

I. **THE VISUAL BODY CAVITY SEARCH VIOLATED MY RIGHTS**

 **UNDER THE FOURTH AMENDMENT** . . . . . . . . . . . . . . . . . . 16

 A. ***Florence v. Board of Chosen Freeholders*** Does Not

 Apply to this Case . . . . . . . . . . . . . . . . . . . . . . . . . . 16

 B.  This Case is District Within the Ambit of ***Weber v. Dell***

 and the Visual Body Cavity Search Violated my Fourth

 Amendment Rights and I am Entitled to Summary Judgment . . . . . . . .21

 C.  Pursuant to Fed.R.Civ.P. 56(g), I am Entitled to Summary

 Judgment as to the Material Facts that Search was a Visual

 Body Cavity Search and Washburn Performed It . . . . . . . . . . . . . . 22

D.  All Five Deputies Violated my Fourteenth Amendment Right
to the Equal Protection of the Laws by Unlawfully Detaining
Me and Causing Me to be Subjected to an Unlawful and
Degrading Search of my Naked Body . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

E.  Washburn is Not Entitled to Qualified Immunity Because
Every Reasonable Officer Would Know that the Search
was Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

II.  **ARBITRARILY CONFINING ME FOR TWO HOURS AFTER
MY BAIL WAS PAID WITHOUT ANY LEGITIMATE
GOVERNMENT PURPOSE WAS UNCONSTITUTIONAL** . . . . . . . . . 32

A.  I Had an Absolute Legal Right to be Released "Forthwith"
Once My Bail was Paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

B.  The Supreme Court's Decision in *County of Riverside v.*
*McLaughlin* Does Not Apply to this Case . . . . . . . . . . . . . . . . . . . . . . . 34

C.  New York Criminal Procedure Law § 520.15(1) Creates a
Liberty Interest Protected by the Substantive Component
of the Due Process Clause of the Fourteenth Amendment . . . . . . . . . . . 36

D.  There is a Disputable Question of Material Fact as to
Whether the Deputies' Refusal to Promptly Release Me
After My Bail was Paid Violated My Substantive Due
Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

E.  The Two-Hour Delay in Releasing Me After My Bail Was
    Objectively Unreasonable and Violated My Rights
    Under the Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

III.  THE COURT ERRED IN GRANTING SUMMARY JUDGMENT
      AS TO THE PERSONAL INVOLVEMENT OF THE DEPUTIES
      BECAUSE DISPUTABLE QUESTIONS OF MATERIAL
      FACT ARE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

IV.  THE FOUR NON-SEARCH DEPUTIES ARE LIABLE FOR
     THEIR FAILURE TO INTERVENE TO PREVENT THE
     UNLAWFUL SEARCH BY WASHBURN . . . . . . . . . . . . . . . . . . . . . . 49

V.  THE COURT ERRED IN DENYING MY MOTION FOR
    RELIEF UNDER FED.R.CIV.P. 56(d) AND MY MOTION
    FOR AN EXTENSION OF THE DISCOVERY
    DEADLINE UNDER FED.R.CIV.P. 16(b)(4) . . . . . . . . . . . . . . . . . . . . .52

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

## Addenda (State Statutory Provisions)

N.Y. Criminal Procedure Law § 520.15(1)(Addendum I) . . . . . . . . . . . . . . . . . 58

N.Y. Criminal Procedure Law § 160.10(1), (2), (3)(Addendum II) . . . . . . . . . .59

*iii*

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .61

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

## **Table of Authorities**

## **CASES**:

*Analytical Diagnostic Labs, Inc. v. Kusel*,

      626 F.3d 135 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 49, 51

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . .26, 31

*Atwater v. Lago Vista*, 532 U.S. 318 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Barnes v. District of Columbia*, 793 F.Supp.2d 260

      (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 35, 40

*Barnes v. District of Columbia*, 242 F.R.D. 113(D.D.C.2007). . . .. . . . . . . . . . 35

*Bell v. Wolfish*, 441 U.S. 5340 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 39

*Berry v. Baca,* 379 F.3d 764 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Bizzarro v. Miranda*, 394 F.3d 82 (2d Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . .24

*Bobbitt v. Marzan*, 2020 WL 5633000 (S.D.N.Y. Sept. 21, 2020) . . . . . . . . 21, 48

*Bryant v. City of New York*, 404 F.3d 128 (2d Cir. 2005) . . . . . . . . . . . .25, 40, 44

*Case v. City of New York*, 233 F.Supp.3d 372 (S.D.N.Y. 2017) . . . . . . . . . . . . .43

*Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir.1982) . . . . . . . . . . . . . . . . . .25

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976) . . . . . . . . . . . . . . . . . . . . . 25

*Corfone v. Manson*, 594 F.2d 934 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . 39

*iv*

***Cotto v. City of Middletown***, 158 F.Supp.3d 67 (D.Conn. 2016) . . . .. .. . . . . . 50

***County of Riverside v. McLaughlin***, 500 U.S.44(1991) . . . . . . . .34, 35, 36, 44, 46

***Davis v. Hall***, 375 F.3d 703 (8th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 43, 47

***Del Marcelle v. Brown Cty. Corp.***, 680 F.3d 887 (7th Cir. 2012) . . . . . . . . . . . 25

***Diamondstone v. Macaluso***, 148 F.3d 113 (2d Cir. 1998) . . . . . . . . . . . . . . . . . 29

***District of Columbia v. Wesby***, 138 S.Ct. 577 (2018). . . . . . . . . . . . . . . . . . . . . 26

***Edrei v. Maguire***, 892 F.3d 525 (2d Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . .40

***Engl v. Aetna Life Ins. Co.,*** 139 F.2d 469 (2d Cir. 1943) . . . . . . . . . . . . . . . . . 48

***Esmail v. Macrane***, 53 F.3d 176 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 24

***Falls v. Pitt***, No. 16-CV-8863 (KMK)(S.D.N.Y. Mar. 26, 2021) . . . . . . . . . 19, 21

***Farrell v. Burke***, 449 F.3d 470 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . .47-48

***Fate v. Charles***, 24 F.Supp.3d 337 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . 17, 19, 20

***Finger Lakes Racing Ass'n, Inc. v. N.Y.S. Racing &***

  ***Wagering Board***, 45 N.Y.2d 471 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

***Florence v. Board of Chosen Freeholders of***

     ***Burlington County***, 566 U.S. 318 (2012) . . . . . . . . . . . 11,16, 17, 18, 19, 20

***Foucha v. Louisiana***, 540 U.S. 71 (1992). . . . . . . . . . . . . . . . . . . . . . . . . .   25, 40

***Garcia v. City of Chicago***, 24 F.3d 966 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . 47

***Gerstein v. Pugh***, 420 U.S. 103 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

***Goldberg v. Hennepin Cty.***, 417 F.3d 808 (8th Cir. 2005) . . . . . . . . . . . . . . . . . 43

***Gonzalez v. Bratton***, 147 F.Supp.2d 180 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . 45

***Gonzalez v. City of Schenectady***, 728 F.3d 149 (2d Cir. 2013). . . . . . . . . 18, 19, 26

***Gonzalez v. Waterbury Police Dep't,***

        199 F.Supp.3d 616 (D.Conn. 2016) . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432 (7th Cir. 1986) . . . . . . . . . . . . . .  45

*Grider v. Bowling*, 785 F.3d 1248 (8th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . 50

*Hanes v. Zurick*, 578 F.3d 491 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . .25

*Harris v. Miller*, 818 F.3d 49 (2d Cir. 2016). . . . . . . . . . . . . . . . . 15, 17, 19, 31

*Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . .20, 21, 45

*Hewitt v. Helms*, 459 U.S. 460 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36, 38

*Hinkle v. Beckham Cty. Bd. of Cty. Commr's*,

       962 F.3d 1204 (10th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Kee v. Hasty*, No. 10-CV-2123 (KMW)(DF)

       (S.D.N.Y. Apr. 14, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Kentucky Dep't of Corrections v. Thompson*,

       490 U.S. 454 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38

*Lauth v. McCollum*, 424 F.3d 631 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 25

*Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 43

*Lynch v. City of New York*, 335 F.Supp.3d 645 (S.D.N.Y. 2018) . . . . . . . . . . . .41

*Manuel v. City of Joliet*, 137 S.Ct. 911 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Matter of Int'l Ry. v. Rann*, 224 N.Y. 83 (1918) . . . . . . . . . . . . . . . . . . . . . . . . 34

*McNeil v. Dir., Patuxent Inst*., 407 U.S. 245 (1972) . . . . . . . . . . . . . . . . . . . . . 44

*Moll v. Telesector Resources Group, Inc*.,

       760 F.3d 198 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005). . . . . . . . . . . . . . . . 40, 41, 42

*Okin v. Village of Cornwall-On-Hudson Police Dep't*,

       577 F.3d 415 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Olim v. Wakinekona*, 461 U.S. 238 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 37-38

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Pesola v. City of New York*, No. 15-CV-1917 (PKC)(SN),

    2016 WL 1267797 (S.D.N.Y. Mar. 30, 2016). . . . . . . . . . . . . . . . . . . . . 42

*Piper v. City of Elmira*, 12 F.Supp.3d 577 (W.D.N.Y. 2014) . . . . . . . . . . . . 49-50

*Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010). . . . . . . . . . . . . . . . . . 44

*Proctor & Gamble Indep. Union v. Proctor & Gamble*, 312

    F.2d 181 (2d Cir. 1962), *cert. denied*, 374 U.S. 830 (1963). . . . . . . 15, 21, 24

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982). . . . . . . . . . . . . . . . . . . . . . . . 33

*Quiles v. City of New York*, 2016 WL 6084078

    (S.D.N.Y. Oct. 12, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Rasmussen v. City of New York*,

    766 F.Supp.2d 399 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Rankin v. Shankler*, 23 N.Y.2d 111 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Rodriguez v. McLoughlin*, 214 F.3d 328 (2d Cir. 2000) . . . . . . . . . . . . . . . 37-38

*Rojas v. Roman Catholic Diocese of Rochester*,

    660 F.3d 98 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Roland v. City of New York*, No. 19-CV-2240 (PKC)(SMG)

    (E.D.N.Y. Jun. 4, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Rosner v. Metropolitan Property & Liab. Ins. Co*.,

    96 N.Y.2d 475 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) . . . . . . . . . . . . . . . . 36

*Sanchez v. Bonacchi*, 799 Fed..Appx. 60 (2d Cir. 2020) . . . . . . . . . . . . . . . . . 27

*Sandin v. Conner*, 515 U.S. 472 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Sarnicola v. Cty. of Westchester*, 229 F.Supp.2d 259 (S.D.N.Y. 2002)…19, 21, 30

***Secrest v. Merck, Sharp & Dohme Corp.***,

       707 F.3d 189 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

***Shain v. Ellison***, 273 F.3d 56 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 26

***Sloley v. VanBramer***, 945 F.3d 30 (2d Cir. 2019). . . . . . . . . 16, 18, 19, 21, 27, 51

***Slone v. Herman***, 983 F.2d 107 (8th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 20, 35

***Sorensen v. City of New York***, 2003 WL 169775 (S.D.N.Y.

       Jan. 23, 2003), ***aff'd in part, appeal dismissed***

       ***in part***, 413 F.3d 292 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 45

***Steele v. Cicchi***, 855 F.3d 494 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 41

***Steen v. Myers***, 486 F.3d 1017 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 23-24

***Swanson v. City of Chetek***, 719 F.3d 780 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . 25

***Terebisi v. Torreso***, 764 F.3d 217 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 26

***Thompson v. Clark***, No. 14-CV-7349 (E.D.N.Y. June 26, 2018). . . . . . . . . . 31, 32

***Town of. Castle Rock v. Gonzalez***, 545 U.S. 748 (2005) . . . . . . . . . . . . . . . . . 37

***Turner v. Safley***, 482 U.S. 78 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

***Vasquez v. Maloney***, 990 F.3d 232 (2d Cir. 2021). . . . . . . . . . . . . . . . . . .27-28, 29

***Vesterhalt v. City of New York***,

       667 F.Supp.2d 292 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . 47

***Vondrak v. City of Las Cruces***, 2009 U.S.Dist. LEXIS

       43790 (D.N.M. Mar. 26, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 35

***Watson v. City of New York***, 92 F.3d 31 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 39

***Weber v. Dell***, 804 F.2d 796 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

***Yick Wo v. Hopkins***, 118 U.S. 356 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

***Zadvydas v. Davis***, 533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40


**UNITED STATES CONSTITUTION**:

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fourteenth Amendment . . . . . . . . 1, 2, 3, 11, 12, 14, 24, 35, 36, 37, 38, 39, 43, 46


**UNITED STATES STATUTES**:

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2, 3, 14, 29, 32, 49, 52


**NEW YORK STATE STATUTES**:

Criminal Procedure Law § 520.15(1) . . . . . . . . . . . . . . . . . . . . . . .33, 34, 36, 39, 58

Criminal Procedure Law § 160.10(1), (2), (3) . . . . . . . . . . . . . . . . . . . . . . . . 43, 59

Executive Law §382(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**FEDERAL RULES OF CIVIL PROCEDURE**:

Fed.R.Civ.P. 16(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15, 52

Fed.R.Civ.P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 52

Fed.R.Civ.P. 37(a)(3)(iii), (iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 54

Fed.R.Civ.P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14, 15, 52, 54

Fed.R.Civ.P. 56(f)(1), (2), (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

Fed.R.Civ.P. 56(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 22, 24

**OTHER SOURCES**:

Rohwer, Claude D., and Skrocki, Anthony M.,

    ***Contracts in a Nutshell*** (6th ed. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Silverstein, Michael, ***Rebalancing* Harlow*: A New Approach to Qualified***

    ***Immunity in the Fourth Amendment***, 68 Case W.Res.L.Rev. 495 (2017) . . 31

Tigar, Michael E., ***Federal Appeals: Jurisdiction***

    ***and Practice*** (2d ed. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

***Webster's New Universal Unabridged***

    ***Dictionary*** (1989 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## Statement of Subject Matter and Appellate Jurisdiction

Plaintiff-Appellant Christopher Murphy ("I") brought suit under 42 U.S.C. § 1983 alleging violations of my rights under the United States Constitution. The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a).

The District Court granted summary judgment to Defendants on November 10, 2021. I filed a timely Notice of Appeal on December 6, 2021.

This appeal is from a final order and judgment that disposes of all claims as to all parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## Issues Presented for Review

## I

Whether absent reasonable suspicion either a strip search or a visual body cavity search of a misdemeanor arrestee whose bail was paid and who did not enter the general population of the local jail violates the Fourth Amendment?

Whether there are reasonably disputable questions of fact as to: [a] the type of search conducted; or [b] who personally conducted the search?

Whether the search violated my rights under the Equal Protection Clause of the Fourteenth Amendment?

## II

Whether, as a matter of law, the search was authorized or directed by a superior officer?   If it was, does this fact, without more, entitle the search officer to qualified immunity if one assumes every reasonable officer would understand his actions were unconstitutional?

## III

Whether the two-hour delay in releasing me after my bail was paid was objectively unreasonable and violated the Fourth Amendment?

Whether the delay was conscience-shocking and violated the substantive due process guarantee of the Due Process Clause of the Fourteenth Amendment?

Whether the overdetention violated my rights under the Equal Protection Clause of the Fourteenth Amendment?

## IV

Whether the personal involvement of the Defendants-Appellees in the two-hour overdetention renders them liable under § 1983?      Whether the four non-search Defendants-Appellees who were present in this area of the jail are liable for their failure to intervene to prevent the unlawful visual body cavity search?

# V

Whether the court erred in denying my cross-motion for relief under Fed.R.Civ.P. 56(d) and/or my related motion for an extension of the discovery deadline under Fed.R.Civ.P. 16(b)(4)?

## **Statement of the Case**

Plaintiff-Appellant Christopher Murphy ("I") commenced the underlying action in the United States District Court for the Western District of New York on June 1, 2017 seeking relief under 42 U.S.C. § 1983 against City of Elmira police officers ("E.P.D.") Hughson and Hillerman and Chemung County Sheriff's Department deputies Gunderman, Washburn, Spencer, Strong and Howe ("Deputies") personally.

My Fourth and Fourteenth Amendment claims arise out an unreasonable two-hour delay in releasing me from custody after my bail was posted on a misdemeanor residential housing code charge.      My Fourth Amendment claim is based on an unlawful visual body cavity search I was subjected to at the Chemung County Jail ("Jail").

The two E.P.D. officers moved for summary judgment on July 8, 2021. ECF No. 65.   The five Deputies similarly filed a motion for summary judgment the same day.   ECF No. 66

Only one of the Deputies (Washburn) submitted an affidavit in support of the motion for summary judgment.   ECF No. 66-7, at 1-4

I filed a Declaration in [a] Opposition to Defendants' Motion for Summary Judgment (ECF No. 75, at 1-66); and [b] Support of a Cross-Motion for Relief under Fed.R.Civ.P. ("Rule") 56(d). ECF No. 75, at 66-107

I later filed a Reply Declaration in support of the Rule 56(d) cross-motion. ECF No. 95, 96

With permission of the court (ECF No. 84), I timely filed a Sur-Reply in Opposition to Defendants' Motion for Summary Judgment. ECF No. 86

Seeking an extension of the fact discovery completion deadline to allow me to move to compel discovery pursuant to Rule 37(a)(3)(iii), (iv), I filed a motion for an extension of discovery pursuant to Rule 16(b)(4). ECF No. 96

On November 10, 2021, the court (Hon. Frank P. Geraci, Jr., U.S.D.J.) issued a Decision and Order ("Decision"): [a] granting all seven Defendants' Motion for Summary Judgment; [b] denying my Cross-Motion for Relief under Rule 56(d); and [c] and denying my Motion for an Extension of Discovery under Rule 16(b)(4). ECF No. 102

Final Judgment was entered the same day. ECF No. 103

I filed a Notice of Appeal on December 6, 2021. ECF No. 104

I am not appealing the district court's grant of summary judgment to the two E.P.D. officers – Hughson and Hillman.

## Statement of Facts

On the morning of June 5, 2014, I was arrested on a bench warrant relating to misdemeanor residential housing code violations alleged to exist inside my own

home, pursuant to Executive Law § 382(2). ECF No. 7, at 3 ¶ 10; *id.*, at 4 ¶¶ 16-17

All the charges were later dismissed. ***Id.***, at 4-5 ¶ 20

I was sixty-seven years old at the time and have no criminal record. ECF No. 7, at 11 ¶ 50

The Securing Order signed by the judge fixed my cash bail at $750 and directed me to appear before him at 1:00 P.M. that same day. ECF No. 66-3, at 2

Elmira police ("E.P.D") refused to accept my girlfriend's ("Barbara") tender of my full cash bail. ECF No. 7, at 6 ¶¶ 27-28

After being searched by the E.P.D. officers (ECF No. 86, at 8), I was transported to the Chemung County Jail ("Jail") in handcuffs secured by a belly chain. ECF No. 66-4, at 42:7-15

Before or about the same time I arrived at the Jail, Barbara paid my $750 cash bail. ECF No. 7, at 8 ¶ 38

Within five to ten minutes of my arrival, one of the Deputies ("Gunderman") told me "your bail is sitting out there" and "we're gonna cut you loose" or "we've gotta cut you loose." ECF No. 7, at 9 ¶ 42; ECF No. 75, at 48-49

Gunderman said this not only to me, but mentioned it to the other Deputies as well. ECF No. 66-4, at 22:13-14; at 63:18-19    He "said nothing whatsoever about about having to complete 'the booking process.'" ECF No. 86, at 7

Gunderman also said "you know, '[y]our wife or your girlfriend is out there and she's raising . . . making a real fuss, making a real commotion." ECF No. 7, at 8 ¶ 39; ECF No. 66-4, at 44:12-18; *id.*, at 51:15-17

I never entered the general population of the Jail. ECF No. 75, at 48-49    I was held in "a separate and distinct holding area or reception area." ECF No. 66-

5

4, at 42:18-20

There are three holding cells in this "admissions area" of the Jail.   ECF No. 66-9, at 4 ¶ 13

Chemung County Jail Policy ("Jail Policy") states: "[n]ew admissions are not to be placed into a cell with inmates that have already been processed into the facility."  *Id*.

All five Deputies were present in this area, but "[t]hey were in and out" and "came and went."   ECF No. 66-4, at 43:13-16

"I asked when I was going to be released several times and I never got an answer." ECF  No. 66-4, at 57: 23-24    "I said, 'My bail's sitting out there.  When am I going to be released?  What's the deal here?  And I never got an answer, and I said that several times." *Id*., at 58:2-5, 15-16

I said this to every Deputy in the room.  ECF No. 66-4, at 58:7-9

The only other detainee in this area of the Jail "looked like a young kid, 14, 15, or 16 years old." ECF  No. 66-4, at 53:22-23   When I asked him what "he was in there for," he said "[f]or skipping school." *Id.* lns. 6-7

I was initially put in a holding cell by myself, but later put in a second one with the young truant. ECF  No. 66-4, at 52:1-2, 20-24

"Gunderman and [Deputy] Washburn both personally commented on the 'fuss'[my] girlfriend, Barbara Camilli, apparently made at the time she posted [my] bail and this clearly seemed to have generated demonstrable resentment, anger, hostility . . . on their part and on the part of the other [Deputies] toward [me]." ECF No. 75, at 49

Chemung County Jail Policy ("Jail Policy") states:

6

"1. At the time of admission to the facility, only those inmates that present a **reasonable suspicion** for being strip-searched will be strip-searched. All other new admissions that do not meet these criteria will be pat searched only (emphasis in original)." ECF No. 66-9, at 2 ¶ 1

2. The Admissions Officer will, upon discovering the reason to perform a strip search on a newly admitted inmate, will [*sic*] notify the Shift Supervisor or OIC that the newly admitted prisoner needs to be strip searched. *Id*., ¶ 2

3. If strip-searched, a report will be made indicating the reason(s) for the strip search, time, date place and officer conducting the search and the Supervisor or OIC who authorized the search. *Id*., at 2-3 ¶ 3

. . .

9. The Admissions Officer will . . . perform a pat search of the inmate for contraband if the officer discovers any contraband they are required to contact their immediate supervisor so a possible strip search can be conducted." *Id*., at 4 ¶ 9

I was never pat searched at the Jail. ECF No. 75, at 48, 93

It is undisputed that no reasonable suspicion existed to believe that I was or might be concealing contraband of any sort. ECF No. 75, at 48, 51; Decision (ECF No. 102), at 9

Around noon, I was subjected to a visual body cavity search. ECF No. 75, at 48, 51, 61; ECF No. 66-8, at 2

It is disputed who performed the search.  ECF No. 75, at 48-52; *id*., at 61-62

Washburn acknowledges that the search was performed, but denies that he performed it.   He does not say who did.    ECF No. 66-7, at 3 ¶¶ 14-15; ECF  No. 75, at 59

None of the other Deputies presented any evidence as to the identity of the search officer.   ECF No. 75, at 52, 59, 62

As part of his own evidence, Washburn submitted the "Strip Search Justi-fication Sheet" (ECF No. 66-8, at 2; ECF No. 75, at 62), reciting:

**Search Officer:  Washburn, William    Badge Number: 6076**

Washburn says in his supporting Affidavit:

> 7.  The Admissions Policy for Admitting New Inmates into the Facility (**Exhibit B**) provides that '[a]t the time of admission to the facility, only those inmates that present a reasonable suspicion for being strip-searched will be strip-searched.' p. 1."   ECF  No. 66-7, at 3 ¶ 17;  ECF No. 66-9, at 2 ¶ 1

> 18. In light of this policy, the strip search, requested by a superior officer, was necessarily based on reasonable sus-picion.   Regardless, because a superior officer directed the strip search, neither myself, nor any other Chemung County Jail officer directed to perform the strip search, would have the discretion to disobey the order and dispense with the strip search.  ECF No. 66-7, at 3 ¶ 18

> 19.  Assuming for purposes of this motion only that it was

8

me that conducted the strip search, I would have lacked the
discretion as to whether or not to perform the strip search, and
the strip search would have occurred solely based on a direct
order from a superior pursuant to Chemung County Jail policy.

*Id*. ¶ 19

*See* ECF No. 75, at 56 n. 26

The "Strip Search Justification Sheet" (ECF No. 66-8, at 2) shows:


Watch Commander's Signature: _____   Badge Number: _____

Date: _____   Time: _____

Comments: _____

_____

_____


The search deputy ordered me to "'lift your nuts,' referring to my scrotum"
and "[t]urn around, bend over and spread your cheeks.'"  ECF  No. 66-4, at 57:12-
14

 "[I] was forced to remove every stitch of clothes [I] was wearing and lift
[my] scrotum – and spread the cheeks of [my] rear end and cough.   [I] was forced
to do all of this while this deputy stood there watching [me] – smirking visibly al-
most the entire time."   ECF No. 7, at 10 ¶ 47

"It seemed like forever, but it was probably not longer than ten minutes."
ECF No. 66-4, at 56:24-25; Decision (ECF No. 102) at 9 ("the search lasted only
ten minutes.")

"[W]hen I mentioned to Washburn that my bail had been posted, I said I got no explanation as to why they weren't releasing me."  ECF  No. 66-4, at 60:4-6

Washburn said something to the effect, "***He's*** not going anywhere.  We're not done with him yet."    And he said, "***He's*** going to sit in ***my*** jail for a while."  ECF No. 66-4, at 60:5-14 (emphasis added); ***id.***, at 61:9-11; ECF No. 75, at 48

Washburn made a gesture with his thumb and forefinger to his colleagues present indicating I have a little penis.    "This gesture was clearly intended as a derogatory or disparaging commentary on [my] penis or the size thereof."  ECF No. 7, at 10 ¶ 48; ECF No. 75, at 48, 62 & n. 30

Washburn's lawyers blew this off as a harmless joke on the part of Washburn for the benefit of the other Deputies present in the room.  ECF No. 75, at 44

It "was clear . . . that [the Deputies] - and Washburn most of all it clearly appeared - were hopping mad about what Gunderman referred to as the 'fuss' raised by Camilli when she posted [my] bail."  ECF No. 86, at 9

I was held for two hours after the Deputies knew my bail had been posted.  ECF No. 7, at 10 ¶ 45; ***id.***, at 16 ¶ 76

I was released in time to walk over to the courthouse to appear before Elmira City Judge Forrest at 1:00 P.M.  ECF No. 66-4, at 75:12-16

-----------

My Amended Complaint (ECF No. 7) is expressly incorporated into, and made a part of, my Declaration in Opposition to Motion for Summary Judgment.  ECF No. 75, at 14 n. 7 & ***id.***, at 25-26 n. 12; ***id.***, at 106

# Summary of Argument

## I

These facts are not disputed: [a] I was arrested on misdemeanor charges; [b] there was no reasonable suspicion to believe I might be concealing weapons or contraband; [c] I never entered the general population of the Jail; [d] the search I was subjected to was not a "strip search," but rather a "visual body cavity search;" and [e] my bail was paid an hour before I was searched and the search officer knew this.

*Florence v. Board of Chosen Freeholders of Cty of Burlington*, 566 U.S. 318 (2012) does not apply to this case.

I am entitled to summary judgment that the visual body cavity search violated the Fourth Amendment – and that even a less intrusive strip search would violate the Fourth Amendment.

Deputy Washburn subjected me to a "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing [and] repulsive, signifying degradation and submission" search despite lacking any colorable lawful authority to do so. *Florence*, 566 U.S. at 345 (Breyer, J. dissenting)

Pursuant to Rule 56(g), I am entitled to summary judgment as to the facts that [a] the search was a "visual body cavity search," rather than "strip search;" and [b] Deputy William Washburn personally performed that search.

The unlawful search also violated my right to the equal protection of the laws guaranteed by the Fourteenth Amendment.

At the very least, the existence of reasonably disputable material facts as to the Fourth and Fourteenth Amendment search issues rendered summary judgment inappropriate.

## II

Absent reasonable suspicion, any reasonable officer would know performing a visual body cavity search on a misdemeanor detainee not entering the general population of a jail and whose bail was paid violates the Fourth Amendment.

This is particularly so given that the visual body cavity search violated Jail Policy on two counts: [a] no strip searches without reasonable suspicion; and [b] prior written authorization by a superior officer.  Jail Policy mirrored controlling Second Circuit Fourth Amendment precedent.   ECF No. 66-9, at 2-3 ¶¶ 1-3; *id*., at 4 ¶ 9

In his bare-bones affidavit, Washburn falsely asserts that, inasmuch as Jail Policy explicitly requires reasonable suspicion to strip search any "new admission" to the facility (ECF No. 66-9, at 2 ¶ 1), the "strip search . . . was necessarily based on reasonable suspicion."  ECF No. 66-7, at 3 ¶ 18

The district court concluded otherwise, finding there was "no specific reasonable suspicion to justify the strip search."   ECF No. 102, at 9

Washburn's fallback position boils down to the assertion that a superior officer "directed" him to perform the search -  and he lacked discretion to disobey such an order.   The district court agreed with Washburn and held he is entitled to qualified immunity because "there is no question that an officer of reasonable com-

12

petence would have thought that conducting a strip search of a new inmate at the direction of a superior was constitutional." ***Id***., at 10

I suggest – respectfully – that whether or not a superior officer authorized or directed the search by Washburn is not a question of fact, but rather a matter of law, because it is based entirely on the interpretation of a written document.

As a matter of law, the visual body cavity search was not authorized – much less "directed" – by any superior officer.

Even a less intrusive "strip search" violated both settled Second Circuit Fourth Amendment precedent and explicit Jail Policy. The material facts are not disputed. This was a commonly-encountered situation that did not call for a split-second decision.

Assuming, ***arguendo***, without conceding, a strip search or visual body cavity search was authorized or directed by a superior officer, Washburn is not entitled to qualified immunity. Every reasonable officer would know such a search violated controlling Fourth Amendment law and precedent in this Circuit.

### III

The two-hour delay in releasing me from custody after my bail was posted was objectively unreasonable and lacked any rational justification or legitimate governmental purpose.

None of the four non-search Deputies presented evidence to challenge my plausible evidentiary showing on this issue and claim – or to support their summary judgment motion.

The five Deputies thus violated my Fourth Amendment rights – as well as my rights under both the Equal Protection Clause and the substantive component of the Due Process Clause of the Fourteenth Amendment.

I am entitled to summary judgment on the Fourth Amendment claim.

Disputable questions of material fact as to whether the delay in releasing me was arbitrary in the constitutional sense and conscience-shocking render summary judgment on the substantive due process claim inappropriate. Summary judgment was also inappropriate as to my selective enforcement claim.

All five Deputies are liable under § 1983 based on their direct personal participation in the unlawful and unreasonable overdetention. On this record, I am entitled to summary judgment on this issue. At the very least, reasonably disputable questions of material fact render summary judgment inappropriate.

The four non-search Deputies were present in this small area of the Jail and had a reasonable opportunity to intervene to prevent Washburn from performing an unlawful visual body cavity search on me. None of the four said or did anything to stop him. Reasonably disputable questions of material fact preclude summary judgment on the question of their liability under § 1983 for failure to intercede.


**IV**


The Defendants got full discovery in this case. To all practical intents and purposes, I got none at all – despite my timely pretrial discovery requests.

In support of my cross-motion for relief under Fed.R.Civ.P. ("Rule") 56(d), I spelled out in detail the information and documents I needed to effectively

oppose a motion for summary judgment.

Assuming, *arguendo*, without conceding, Defendants met their burden as moving parties under Rule 56(a), their motion for summary judgment should have been denied, so as to allow me to obtain the discovery needed to withstand this litigation-ending dispositive motion.

My motions for relief under Rule 56(d) and for an extension of discovery under Rule 16(b)(4) should both have been granted.

## ARGUMENT

### Standard of Review

"'We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor.'" ***Harris v. Miller***, 818 F.3d 49, 57 (2d Cir. 2016)(citation omitted)

"Since we hold that there was no triable issue of fact, and that [appellant], although it made no cross motion, was entitled to summary judgment, summary judgment will be entered for [appellant]." ***Proctor & Gamble Indep. Union v. Proctor & Gamble***, 312 F.2d 181, 190 (2d Cir. 1962), ***cert. denied***, 374 U.S. 830 (1963)

***See also*** Fed.R.Civ.P. 56(f)(1), (2), (3); Fed.R.Civ.P. 56(g)

# I

## THE VISUAL BODY CAVITY SEARCH VIOLATED MY RIGHTS
## UNDER THE FOURTH AMENDMENT

### A. *Florence v. Board of Chosen Freeholders of Burlington County* Does Not Apply to this Case

In its Decision, the district court held that "[a]though the [Strip Search] Justification Sheet [Doc. No. 66-8, at 2] does not reveal any specific reasonable suspicion to justify the strip search, *Florence* [*v. Bd. of Chosen Freeholders of Burlington Cty*., 566 U.S. 318 [2012]**)** does not require it.   Rather, *Florence* requires courts to defer to corrections officials 'absent substantial evidence in the record' to show that officials have exaggerated their response."   566 U.S. at 328 (strip search permissible where plaintiff was arrested pursuant to a bench warrant and was held in general population with other inmates).  There is no such evidence here."  ECF No. 102, at 9

The Supreme Court's 2012 decision in *Florence* does not declare open season on the privacy interests and bodily integrity of any detainee who may be briefly held in a local jail before making bail.       The Court carves out several bright-line exceptions to its holding – and, taken together, these make *Florence* simply a red herring when it comes to this case.

Here's why *Florence* does not apply:

*First*, as in *Sloley v. VanBramer*, 945 F.3d 30, 37 n. 5 (2d Cir. 2019),

16

"[t]here is no indication here that the search was conducted pursuant to a jailhouse policy that would bring it within the ambit of *Florence* . . . "

"If the inmate's Fourth Amendment claim challenges a prison regulation or policy, courts typically analyze the claim under *Turner v. Safley*, 482 U.S. 78 (1987) . . . But if the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Harris v. Miller*, 818 F.3d 49, 57-58 (2d Cir. 2016)

"[T]he search here was a discretionary one . . . Defendants ask the Court to uphold an individual officer's authority to select unlucky arrestees to be strip searched, for no articulable reason, at the officer's absolute discretion. But in the absence of individualized reasonable suspicion, the existence of a well-reasoned general policy is the only thing protecting an arrestee from arbitrary (unreasonable) search of his person." *Fate v. Charles*, 24 F.Supp.3d 337, 351 (S.D.N.Y. 2014)

*Second*, I never entered the general population of the Jail.

"This case does not require us to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees. This describes the circumstances in *Atwater* [*v. Lago Vista*, 532 U.S. 318, 324 (2001)]. ('Officers took Atwater's 'mug shot' and placed her, alone, in a jail cell for about one hour, after which she was taken before a magistrate and released on $310 bond.')." *Florence*, at 338-339

It also aptly describes the circumstances here – subject to only a couple of inconsequential differences.

Jail Policy states: "The inmate will be secured in one of the three holding

17

cells and will not be left alone in the admissions area without an officer present. New admissions are not to be placed into a cell with inmates that have already been processed into the facility."  ECF No. 66-9, at 4 ¶ 13

The only other detainee in this "admissions area" of the Jail was a fifteen-or-so year old kid picked up for "skipping school."    When the Deputies took me out of the holding cell I was alone in and put me in a second one with the young truant, the first holding cell remained vacant for duration of my confinement.

"The Court holds that jail administrators may require all arrestees *who are committed to the general population of a jail* to undergo visual strip searches . . ." *Id*., at 341 (Alito, J., concurring)(emphasis in original)

This critical bright-line distinction was explicitly recognized by the Court in *Gonzalez v. City of Schenectady*, 728 F.3d 149, 160 (2d Cir. 2013)("[t]he plaintiff in *Florence* was placed in a general prison population.")

"In *Florence*, the Court repeatedly stressed that the strip search comes *after* the facility determines that the incoming detainee 'will be' placed in the general population  . . . We would reject any argument that the County . . . could treat all its incoming detainees as bound for its jail's general population, thus allowing universal strip searches."  *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1237 (10th Cir. 2020)(emphasis mine)

*Third*, the search I was subjected to was not a "strip search," but rather a full "visual body cavity search."   "They 'require an arrestee not only to strip naked in front of a stranger, but also to expose the most private parts of [his] body to others.  This is often, as here, done while the person arrested is required to assume degrading and humiliating positions."  *Sloley*, 945 F.3d at 38 (citation omitted)

18

"It does not appear that **Florence** applies to visual body cavity searches at all." **Fate**, 24 F.Supp.3d at 350 (citations omitted)

Although the search here was a "visual body cavity search," even a less intrusive "strip search" violates the Fourth Amendment on the undisputed facts of record. **Sloley**, 945 F.3d at 37 n. 4  That said, the search here was clearly a full visual body cavity search under the applicable legal yardstick. **Id**., at 38; **Harris**, 818 F.3d at 58  **And see Gonzalez**, 728 F.3d at 159-60; **Falls v. Pitt**, No. 16-CV-8863 (KMK), at 7 n. 10 (S.D.N.Y. Mar. 26, 2021)("[T]he terminology used to describe different types of invasive body cavity searches is often imprecise and inconsistent. This observation applies to the relevant case law as well as to Defendants' various submissions."); **Sarnicola v. Cty. of Westchester**, 229 F.Supp.2d 259, 272 & n. 5 (S.D.N.Y. 2002)(Defendant's "terminology is confusing, to say the least . . . The decision in this case rests not on linguistics, but on the acts authorized by [the Defendant].")

**Fourth**, the record facts clearly bespeak, in the words of **Florence**, 566 U.S. at 328, the sort of "exaggerated response" on the part of Washburn - to which the Court points out its ruling does not apply.  By any rational yardstick, a hand gesture about the size of my penis is an "exaggerated response."

While Washburn's lawyers dismiss this gesture as innocuous - "jokes with another Officer," as they put it (ECF No. 75, at 44) - "[i]f this was a joke, [I] was not laughing.  It was humiliating and it hurt - as Washburn clearly intended it to do.  Indeed, as I think the Court can well imagine, it is humiliating and hurtful for [me] to have all this necessarily reiterated and repeated in court papers." ECF No. 75, at 44

"[I]f a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." ***Bell***, 441 U.S. at 539

"***Florence*** explicitly abstained from considering 'instances of officers engaging in intentional humiliation and other abusive practices' . . . Strip searches without a legitimate goal, such as searches meant to punish a detainee, remain unconstitutional." ***Fate***, 24 F.Supp.3d at 354 (citation omitted)

*Fifth*, the search here was performed an hour after my bail was paid - and after Washburn clearly knew it had been paid.

"Here, there has already been a judicial determination that the inmate is entitled to freedom from imprisonment. In the eyes of the law, this person is no longer a prisoner." ***Barnes v. District of Columbia***, 793 F.Supp.2d 260, 276 (D.D.C. 2011)

"[W]hen Judge Ely's order suspending Slone's sentence became final . . . the state lost its lawful authority to hold Slone. Therefore, any continued detention unlawfully deprived Slone of his liberty . . . " ***Slone v. Herman***, 983 F.2d 107, 110 (8th Cir. 1993)

If the Deputies had no lawful authority to hold me after my bail was paid, *a fortiori* Washburn had no lawful authority to subject me to a visual body cavity search an hour later.

*See also Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008)("Hartline appears to have been detained for the sole purpose of being strip searched.")

**B.  This Case is Directly Within the Ambit of *Weber v. Dell* and the**
**Visual Body Cavity Search Violated my Fourth Amendment Rights**
**and I am Entitled to Summary Judgment**

The undisputed facts are these:  [a] I was arrested on misdemeanor charges; [b] there was no reasonable suspicion to believe I might be concealing contraband; and [c] I never entered the general population of the Jail.

This case is within the direct ambit of, and controlled by, ***Weber v. Dell,*** 804 F.2d 796, 802 (2d Cir. 1986) and its progeny.

"[T]he Fourth Amendment 'requires an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before he or she may be lawfully subjected to a strip search.'"  ***Sloley****,* 945 F.3d at 37 (quoting ***Hartline***, 546 F.3d at 100 [quoting, in turn, ***Weber***, 804 F.2d at 102]).

I am entitled to summary judgment that even a less intrusive strip search violates the Fourth Amendment.  ***Sarnicola***, 229 F.Supp.2d at 265, 275;  ***Bobbit v. Marzan***, 2020 WL 5633000, at *12 (S.D.N.Y. Sept. 21, 2020);  ***Falls***, No. 16-CV-8863, at 64, 66

***See*** Rule 56(f)(1), (2), (3) and ***Proctor & Gamble***, 312 F.2d at 190

**C**. **Pursuant to Rule 56(g), I am Entitled to Summary Judgment as to the Material Facts that the Search Was a Visual Body Cavity Search and Washburn Personally Performed It**

In his 2021 affidavit in support of summary judgment, Washburn says:

14. I did not conduct a strip search of Plaintiff, nor did I direct that the search be performed.

15. Rather, as the Booking/Admissions Officer, I merely recorded that the strip search took place as part of the booking process. ECF No. 66-7, at 3 ¶¶ 14-15

In support of his motion for summary judgment, Washburn submitted the "Strip Search Justification Sheet" dated June 5, 2014 (the day of the search) (ECF No. 66-8, at 2), explicitly reciting:

**Search Officer: Washburn, William Badge Number: 6076**

Washburn does not say who did perform the search. ECF No. 75, at 59 Nor do any of the other four Deputies come forward with any information as to the identity of the person who performed the search. *Id*., at 51-52, 59

As the self-proclaimed "Booking/Admissions Officer" – who recorded that the search was conducted – Washburn presumably drafted the "Strip Search Justification Sheet," identifying himself as the "Search Officer." This is Washburn's own evidence, not mine. ECF No. 75, at 62

If your mother-in-law has one big eye in the middle of her forehead, you don't bring her in the living room.

"Washburn makes no attempt whatsoever to explain or reconcile the blatant

22

contradiction between his naked assertions, on one hand, and the evidence he presents to support his account, on the other." *Id*.

Washburn performed the visual body cavity search.   Doc. No. 75, at 48-51

"[T]he relevant contradiction is not only unequivocal, but left unexplained – indeed, is inexplicable . . ."   *Secrest v. Merck, Sharp & Dohme Corp*., 707 F.3d 189, 194 (2d Cir. 2013)   ECF No. 75, at 54

"[F]actual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not 'genuine' issues for trial."   *Moll v. Telesector Resources Group, Inc.,* 760 F.3d 198, 205 (2d Cir. 2014)   ECF No. 75, at 52-53

"To be sure, the Washburn affidavit is not intended to create a 'sham issue of fact' to defeat to defeat a motion for summary judgment.   Nonetheless, . . . the policy which underlies the 'sham affidavit' policy should apply here with far greater force – simply because Washburn is the moving party and thus carries the heavy burden imposed by Rule 56(a)."   ECF No. 75, at 53, 54

"[Plaintiff] and her counsel were given ample opportunity to explain or reconcile [her] inconsistent and contradictory statements, but no such explanation was provided." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir.  2011)    ECF No. 75, at 57-66, 68-76

Washburn's self-serving *post hoc* assertions (ECF No. 66-7, at 2-3 ¶¶ 13-19) fit the paradigm of a "sham affidavit."   ECF No. 75, at 47, 50-54

"Summary judgment is 'not a dress rehearsal or practice run.   It is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*,

23

486 F.3d 1017, 1022 (7th Cir. 2007)

I am entitled to judgment as a matter of law as to the material facts that [a] the search was a visual body cavity search; and [b] Washburn personally performed it. Pursuant to Rule 56(g), I respectfully request that the Court grant me summary judgment as to both material facts. *Proctor & Gamble*, 312 F.2d at 190

## D. All Five Deputies Violated my Fourteenth Amendment Right to the Equal Protection of the Laws by Unlawfully Detaining Me and Causing Me to be Subjected to an Unlawful Degrading Search of my Body

It was clear that Washburn's "***actual*** motive and purpose was to teach [me] a lesson – to punish [me] for what Washburn clearly regarded as the sins of [my] girlfriend, Camilli." Doc. No. 86, at 10 (emphasis in original)

"The record clearly shows that the County Defendants - especially Washburn – were actuated and driven by personal animus, vindictiveness and impermissible subjective motivation." Doc. No. 86, at 9

The factual showing set out in my Amended Complaint plausibly states an actionable class-of-one equal protection claim. Doc. No. 7, at 4 ¶¶ 15, 18; *id*., at 17 ¶ 79; Doc. No. 66-1 at 1 ¶ 2; Doc. No. 66-6, at 1-2 ¶ 4; Doc. No. 66-4, at 76-77

"The branch of equal protection law that protects individuals from unequal treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)(quoting *Esmail v. Macrane*, 53 F.3d 176, 180 [7th Cir. 1995][Posner, J.])

**See also Analytical Diagnostic Labs, Inc. v. Kusel**, 626 F.3d 135, 142-43 (2d Cir. 2010)(citing *Hanes v. Zurick*, 578 F.3d 491, 495-96 [7th Cir. 2009])

"Equal protection demands at a minimum that a municipality must apply its law in a rational and nonarbitrary way . . . This requires a showing that its application of the law 'rationally furthers some legitimate, articulated state purpose and therefore does not constitute invidious discrimination.'" *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 1982)(citing *Yick Wo. v. Hopkins*, 118 U.S. 356, 373-74 [1885][other citations omitted])

"The paradigmatic 'class of one' case, [ ] sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)

"This is a case about a class-of-one equal protection claim in which the plaintiff has demonstrated hostility, but may have failed to identify a similarly situated individual who received more favorable conduct. The magistrate judge granted summary judgment for defendants because, though there was evidence of animus, there was no similarly situated individual. Because animus is the very basis of a class-of-one claim, we reverse." *Swanson v. City of Chetek*, 719 F.3d 780, 781 (7th Cir. 2013)

**See City of New Orleans v. Dukes**, 427 U.S. 297, 303 (1976); *Foucha v. Louisiana*, 504 U.S. 71, 84-85 (1992); *Bryant v. City of New York*, 404 F.3d 128, 134 (2d Cir. 2006); *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 893-94, 899 (7th Cir. 2012)(Posner, J.) and *id.*, at 913-16 (Wood, J., dissenting)

25

**E. Washburn is Not Entitled to Qualified Immunity Because Every Reasonable Officer Would Know the Conduct is Unconstitutional**

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would understand that what he is doing violates thar right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 714 (2011)(brackets and internal quotation marks omitted)

"The purpose of this doctrine is ensure that the official being sued had fair warning that his or her actions were unlawful." *Terebisi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014)(citation and internal quotation marks omitted)

"The precedent must be clear enough that every reasonable officer would interpret it to establish the particular rule the plaintiff seeks to apply." *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018)

"[W]e can expect police officers to be familiar with black-letter law applicable to commonly encountered situations . . ." *Gonzalez*, 728 F.3d at 161

"[I]t was clearly established in 1995 that persons charged with a misdemeanor and remanded to a local correctional facility. . . have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons." *Shain v. Ellison*, 273 F.3d 56, 66 (2d Cir. 2001)

"[V]isual body cavity searches must be justified by specific, articulable facts supporting reasonable suspicion that an arrestee is secreting contraband inside the body cavity to be searched.    Moreover, because this requirement was established by sufficiently persuasive authority, it was 'clearly established' for

26

purposes of a qualified immunity defense . . . "  *Sloley*, 945 F.3d at 33-34

 *See also Sanchez v. Bonacchi,* 799 Fed.Appx. 60, 62 (2d Cir. 2020)

 Here, it is undisputed that: [a] I was arrested on misdemeanor charges; [b] there was no reasonable suspicion to believe I might be concealing any sort of contraband; and [c] I never entered the general population of the Jail.

 Washburn declares "[a]s a Booking/Admission Officer, I have have been trained to comply with the Chemung County Sheriff's Office policies and procedures for the booking and intake of inmates at the Chemung County Jail."  ECF No. 66-7, at 1 ¶ 4

 Jail Policy requires two things to perform a strip search: [a] reasonable suspicion (ECF No. 66-9, at 2 ¶ 1); and [b] prior written authorization by a superior officer.  *Id*., at 2-3 ¶¶ 2-3; *id*., at 4 ¶ 9

 Here, there was neither.

 In its Decision, the court stated: "According to the 'Strip Search Justification Sheet,' Plaintiff was strip searched 'per Post 1,' ECF No. 66-8, at 2, which means that the search was conducted at the direction of a superior officer.  ECF No. 66-1 at ¶ 27."  ECF No. 102, at 8-9

 The court goes on to say: "[a] superior officer directed the strip search of Plaintiff, who was held with another detainee, and the search lasted only ten minutes." *Id*., at 9

 The court concludes:  "[e]ven assuming Defendant Washburn conducted ted the strip search - which he denies - there is no question that an officer of reasonable competence would have thought that conducting a strip search of a new inmate at the direction of a superior was constitutional. *Vasquez v. Maloney*, 990

27

F.3d 232, 241 (2d Cir. 2021) . . . Accordingly, Defendant Washburn is entitled to qualified immunity with respect to this particular claim." *Id*., at 10

I timely requested a copy of "Post 1" under Rule 34. ECF No. 75, at 60

Washburn responded: "Defendant is in the process of reviewing internal records in order to determine whether a copy of 'Post 1' is available and will produce same under separate cover at a later date to the extent it is available." *Id*.

"Post 1" was never produced, "nor was I ever given a reason for Washburn's failure or refusal to provide a copy of this critical document." *Id*. I have no idea what "Post 1" is or what it says or if it even exists.

This is what the "Strip Search Justification Sheet" (ECF No. 66-8, at 2) says:

Search Officer: Washburn, William     Badge Number: 6076


Explanation of the grounds or reasons for conducting a strip search:

per Post 1


Watch Commander's Signature: _____ Badge Number: _____

Date: _____     Time: _____

Comments:

_____

_____

_____

_____

"[P]er Post 1" is recited under the heading "[e]xplanation of the grounds or reasons for conducting a strip search."    The space provided for the "Watch Commander's Signature" and "Badge Number" is empty.

Treating the interpretation of writings as a question of law rather than a question of fact "permits appellate courts to review fully the trial court's interpretation thereby permitting the appellate judges to reach their own conclusions . . ." Rohwer and Skrocki, *Contracts in a Nutshell* 222 (6th ed. 2006)

I respectfully submit, as a matter of law, the visual body cavity search was not authorized by a superior officer - much less "directed" by one.

Even if the search was performed "at the direction of a superior," this would not entitle Washburn to qualified immunity.    In its Decision (ECF No. 102, at 10), the court excerpts this sentence from *Vasquez*, 990 F.3d at 241:

> ***Plausible*** instructions from a superior or fellow officer support qualified immunity where, ***viewed objectively in light of the surrounding circumstances***, they could lead a ***reasonable*** officer to conclude that the necessary legal justification for his actions exists (emphasis mine).

In the very next sentence, the Court goes on to point out: "[y]et where an officer is clearly and unequivocally on notice that an individual's past encounters with police do not provide an adequate basis for stopping him, a superior officer's contrary instructions will not shield him the arresting officer from liability." *Id*., at 242 (citing ***Diamondstone v. Macaluso***, 148 F.3d 113,117-18,126 [2d Cir. 1998])

"An officer is qualifiedly immune from [§] 1983 liability when he

performs a discretionary act based on a mistaken but objectively reasonable belief that his conduct is constitutional." ***Quiles v. City of New York***, 2016 WL 6084078, at *12 (S.D.N.Y. Oct. 12, 2016)

Even if particularized reasonable suspicion existed – which it did not – Washburn lacked discretionary authority to unilaterally decide to strip search me (much less do a visual body cavity search). Jail Policy explicitly entrusted such discretionary authority exclusively to "the Shift Supervisor or OIC." ECF No. 66-9, at 1-2 ¶¶ 2-3; *id.*, at 3 ¶ 9

Washburn's role was purely ministerial, not discretionary. Jail Policy is the bureaucratic equivalent of ***Strip Searches for Dummies***. All Washburn had to do was read it and comply with what it required in this commonly encountered situation.

In ***Sarnicola v. Cty. of Westchester***, 229 F.Supp.2d 259, 270 (S.D.N.Y. 2002), the county had a written strip search policy that "tracked the language of the controlling cases." In addition to reasonable suspicion, "[a]n officer who wishes to conduct a strip search must obtain permission from a supervisor . . ."

The defendant's "strip search order violated not only settled constitutional law but Westchester County's official policy concerning strip searches." ***Id***., at 268 Strip searching plaintiff absent reasonable suspicion ". . . does not even comport with County Police policy, let alone pass constitutional muster." ***Id***., at 274    The defendant (McGurn) was not entitled to qualified immunity because  "[n]o officer of reasonable competence could have thought that ordering a strip search without individualized reasonable suspicion was justified.    Any rational jury would find that McGurn's order, which overtly violated written County policy, was 'so flawed

that no reasonable officer would have made a similar choice.'" ***Id***., at 275 (citation omitted)

Jail Policy here also mirrored controlling Second Circuit Fourth Amendment precedent.

***See also Okin v. Village of Cornwall-On-Hudson Police Dep't***, 577 F.3d 415, 433-34 (2d Cir. 2009)("[W]e may examine statutes or administrative provisions in conjunction with prevailing circuit or Supreme Court precedent to determine whether an individual had fair warning that his or her behavior would violate the victim's constitutional rights.")

***And*** Silverstein, ***Rebalancing*** **Harlow***: A New Approach to Qualified Immunity in the Fourth Amendment***, 68 Case W. Res. L.Rev. 495, 532, 534, 539-40 (2017)

In ***Ashcroft***, 563 U.S. at 743, the Supreme Court points out "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law' . . . Ashcroft deserves neither label . . . " (citation omitted)

I suggest – most respectfully – that Washburn deserves at least one of them, more likely both.

"[O]fficers should be protected from reasonable mistakes, but not allowed to act in clear violation of constitutional law." ***Thompson v. Clark***, No. 14-CV-7349, at 14 (E.D.N.Y. June 26, 2018)(as amended)(Weinstein, J.)

Washburn gratuitously and unlawfully decided to subject me to "'[O]ne of the clearest forms of degradation in Western Society . . .'" ***Harris v. Miller***, 818 F.3d 49, 58 (2d Cir. 2016)(citation of omitted)    As the jailer, he had all the power.

As his prisoner, I had none.

Washburn now demands not ***qualified*** immunity, but nothing less than ***absolute*** immunity.

When it comes to his liability under § 1983, Deputy Washburn – to borrow the words of Nietzsche – cultivated his own hangman.

Granting Washburn immunity "'is not only wrong on the law; it also sends an alarming signal to law enforcement officers and the public.     It tells. . . the public [and officers] that palpably unreasonable conduct will go unpunished.'" ***Thompson***, at 13-14 (citation omitted)

## II

## ARBITRARILY AND UNLAWFULLY HOLDING ME IN CONFINEMENT FOR NO LEGITIMATE GOVERNMENTAL PURPOSE TWO HOURS AFTER MY BAIL WAS PAID WAS UNCONSTITUTIONAL

### A.  <u>I Had an Absolute Legal Right to be Released "Forthwith" Once my Bail Was Paid</u>

Washburn says "[i]t is the policy of the Chemung County Sheriff's Office to complete the entire booking/admission process for every remanded inmate delivered into the custody of the Chemung County Jail prior to releasing them on bail." ECF No. 66-7, at 1 ¶ 5

He goes on to state "[r]eleasing an inmate on bail cannot be effectuated before the booking process is finished as a complete custodial record needs to be generated and maintained for each remanded inmate." *Id*., at 2 ¶ 6

Sounds real official. In their Reply papers, Defendants solemnize the "booking process" by rechristening it "the Booking Process." ECF No. 82, at 5

The court accepted this as an undisputed fact. ECF No. 102, at 7 (citing Defendants' Statement of Undisputed Facts [ECF No. 66-1, at 6 ¶ 45]). I most assuredly disputed this proposition. ECF No. 75, at 31-39; *id*., at 41-42

But this is neither a question of fact nor mixed question of law and fact, but rather a conclusion of law. *See Pullman-Standard v. Swint*, 456 U.S. 273, 286-89 & n. 16 (1982)

Nothing in Jail Policy (ECF No. 66-9, at 2-9) supports Washburn's *ipse dixit* assertion that, after my bail was paid, I could not be released until the so-called "Booking Process" was finished.

Far more important, Criminal Procedure Law ("CPL") § 520.15(1) explicitly states "[u]pon proof of the deposit of the designated amount [of bail] the [detainee] must be forthwith released from custody." Statutory Addendum I (*infra,* at 65); ECF No. 75, at 37-39

"Forthwith" means "immediately; at once; without delay." *Webster's New Universal Unabridged Dictionary* 558 (1989)

In the absence of any contrary indication by the Legislature, the words of a statute are to be given their ordinary meaning. *Rosner v. Metropolitan Property and Liab. Ins. Co*., 96 N.Y.2d 475, 479-80 (2001); *Finger Lakes Racing Ass'n, Inc. v. N.Y.S. Racing & Wagering Bd*., 45 N.Y.2d 471, 479-80 (1978)

33

If it had been the design of the Legislature to qualify the clear mandate of CPL § 520.15(1), "that body would undoubtedly have done so expressly and un-equivocally." *Rankin v. Shankler*, 23 N.Y.2d 111, 115 (1968)

"That which is directed by law for one's protection and advantage is said to be one's right. " *Matter of Int'l Ry. Co. v. Rann*, 224 N.Y. 83, 87 (1918)

When Barbara paid my bail, I had an unqualified right to be released and these jailers were obligated to release me – "forthwith" – and not when they felt like doing it or got around to it.

**B.**  **The Supreme Court's Decision in *County of Riverside v. McLaughlin* Does not Apply to this Case**

Defendants fasten on the fact that the delay in releasing me after my bail was paid was only two hours.     They say "Plaintiff's claim of a Fourth Amendment vi-olation . . . based on the delay in his release on bail should be dismissed as a delay of less than 48-hours is presumptively constitutional." ECF No. 66-10, at 13

In support of this contention, they cite *Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) and a number of cases from this Circuit and five others.   ECF No. 75, at 31-37

In *McLaughlin*, 500 U.S. at 56, the Court held "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a gener-al matter, comply with the promptness requirement of *Gerstein (v. Pugh,* 420 U.S. 103 [1975])."

Defendants assert that, inasmuch as the delay in this case was merely two

34

hours, it was constitutional.     The fallacy of this reasoning is pointed up in one of their cases - ***Vondrak v. City of Las Cruces***, 2009 U.S. Dist. LEXIS 43790, at *25-26 (D.N.M. Mar. 26, 2009).  ECF No. 75, at 36

Vondrak was lawfully arrested drunk driving.  ***Id***., at *21   He alleged that "the two-hour period for which he was held and during which he was administered breath tests were excessive and violated his Fifth, Fourteenth and Eighth Amendment rights."  ***Id***., at *22

The ***Vondrak*** court distinguishes ***Barnes v. District of Columbia***, 242 F.R.D. 113, 117-19 (D.D.C. 2007).  ***Id***., at *25-26      In ***Barnes***, the court explains "at issue in ***McLaughlin*** was the procedural, albeit very important, right to a prompt probable cause hearing.    In a case such as this one, the issue is the prisoner's ***absolute*** right to freedom."  ***Id***., at 118 (emphasis by the court)

In ***Vondrak***, the court concluded "[u]nlike the prisoners in ***Barnes*** . . ., who had already been found to entitled to release, at the time of his detention, Vondrak was being held while law enforcement conducted preliminary administrative matters and administered multiple breath tests to check his blood-alcohol content.  Essentially, the police were determining whether they should continue to hold Vondrak and whether they should charge him with any crimes." ***Id***., at *26

In other words, "[h]ere, there has already been a judicial determination that the inmate is entitled to freedom from imprisonment.  In the eyes of the law, this person is no longer a prisoner."    ***Barnes***, 793 F.Supp.2d at 276

"[W]hen Judge Ely's order suspending Slone' sentence became final . . . the state lost its lawful authority to hold Slone."  ***Slone***, 983 F.2d at 110

It is inconsequential that the delay in releasing me after my bail was paid was less than the presumptive forty-eight-hour mark established in ***McLaughlin***.

## C. <u>New York Criminal Procedure Law § 520.15(1) Creates a Liberty Interest Protected by the Substantive Component of the Due Process Clause of the Fourteenth Amendment</u>

"Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." ***Hewitt v. Helms***, 459 U.S. 460, 466 (1983)(citation omitted)

"[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." ***Kentucky Dep't of Corrections v. Thompson***, 490 U.S. 454, 460 (1989)

"[O]ur method of inquiry in these cases always has been to examine closely the language of the relevant statute and regulations." ***Id***.,at 461 ***See also Russo v. City of Bridgeport***, 479 F.3d 196, 203 (2d Cir. 2007)("[W]e have generally looked to the law of the state in which the arrest occurred.")

"'[A] State creates a protected liberty interest by placing substantive limitations on official discretion' . . . [T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." ***Id***., at 462 (citations omitted)

"The regulations at issue here, however, lack the requisite mandatory language. They stop short of requiring that a particular result is to be reached upon

a finding that the substantive predicates are met." ***Id***., at 464

In ***Olim v. Wakinekona***, 461 U.S. 238, 240 (1983), the Supreme Court considered whether "the transfer of a prisoner from a state prison in Hawaii to one in California implicates a liberty interest within the meaning of the Due Process Clause of the Fourteenth Amendment."

The Hawaii state prison regulations at issue "contain[ed] no standards governing the Administrator's exercise of his discretion." ***Id***., at 243

The Court held that "a State creates a protected liberty interest by placing substantive limitations on official discretion.    An inmate must show 'that particularized standards or criteria guide the State's decisionmakers' . . .   If the decisionmaker is not 'required to base its decisions on objective and defined criteria, but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' . . . the State has not created a constitutionally protected liberty interest . . .   Hawaii's prison regulations place no substantive limitations on official discretion and thus create no liberty interest entitled to protection under the Due Process Clause." ***Id***., at 249 (citations omitted)

"A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." ***Town of Castle Rock v. Gonzalez***, 545 U.S. 748, 756 (2005)(citing ***Thompson***, 490 U.S. at 462-63)

As Lord Chief Justice Holt reminds, "[d]iscretionary is but a softer word for arbitrary." Tigar, ***Federal Appeals: Jurisdiction and Practice*** § 3.17, at 180 (2d ed. 1993)

In ***Rodriguez v. McLoughlin***, 214 F.3d 328, 331 (2d Cir. 2000), a foster mother sued the City of New York over the temporary removal of her foster son

37

from her home.    The district court held the plaintiff "had a liberty interest within the Fourteenth Amendment's Due Process Clause in her relationship with her foster . . . child Andrew at the time of his removal from her home . . ." *Id*., at 334

The district court relied on "eight statutory and regulatory provisions of New York law." *Id*., at 339

The Court of Appeals explained "[w]e see in these sections no language providing substantive predicates for, or substantive limitations on, the exercise of official discretion with respect to matters of removal or visitation." *Id*., at 340

"In sum, none of the statutory or regulatory sections called to our attention contains any substantive predicates or explicitly mandatory language giving directives to decisionmakers . . . We cannot conclude that these provisions are sufficient to give plaintiffs the liberty interest they assert." *Id*., at 341

"'The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question.'" *Id*., at 338 (quoting *Thompson*, 490 U.S. at 464 n. 4)(emphasis by the Supreme Court)

In *Rodriguez*, 214 F.3d at 338, the Court points out that *Thompson*, *Olim* and *Hewitt* "all arose in a prison context, and that the Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), somewhat altered the analysis somewhat by ruling the mere presence of mandatory language does not necessarily mean that a liberty interest has been created   . . .   We do not regard *Sandin* as overruling the the principle for which we cite the *Thompson* line of cases   . . .   [T]he *Sandin* Court's modification of the *Thompson* analysis appears to be limited to the prison regulation context . . ."

Significantly, the **Sandin** Court explicitly distinguishes **Bell v. Wolfish**, 441 U.S. 520 (1979)("**Bell** dealt with the interests of pretrial detainees and not convicted prisoners.")  **Id**., 515 U.S. at 484

CPL § 520.15(1) states: "[u]pon proof of the deposit of the designated amount [of bail], the [arrestee] must be forthwith released from custody." Statutory Appendix I;  ECF No. 75, at 37-39 (Statutory Addendum I, **infra**, at 66)

This statutory provision:  [a] contains "explicitly mandatory language;"  [b] "establishes specified substantive predicates to limit discretion;" [c] creates a substantive, not merely procedural, right (**see Watson v. City of New York**, 92 F.3d 31, 37-38 [2d Cir. 1996]; **Corfone v. Manson**, 594 F.2d 934, 938 [2d Cir. 1979]); and [d] mandates absolute freedom, not merely the "freedom" to be confined in some more, rather than less, enjoyable portion of a maximum security prison than another by convicted murderer serving thirty years to life.  **Sandin**, 515 U.S. at 475, 483, 486-87

CPL § 520.15(1) creates a substantive liberty interest protected by the Due Process Clause of the Fourteenth Amendment.


**D**. <u>There is a Disputable Question of Material Fact as to Whether the Deputies' Refusal to Promptly Release Me After my Bail was Paid Violated my Substantive Due Process Rights</u>


Arbitrary refusal to release a detainee from custody "forthwith" after his or her bail is paid violates the substantive component of the Due Process Clause by infringing upon the individual's liberty interest in being free from incarcera-

39

tion absent a conviction.  ***Barnes***, 793 F.Supp.2d at 275

This liberty interest is deeply rooted: "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." ***Foucha v. Louisiana***, 504 U.S. 71, 80 (1992)

"Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that '[the Due Process] Clause protects." ***Zadvydas v. Davis***, 533 U.S. 678, 690 (2001)(citing ***Foucha***, at 80)

"The Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression.'" ***Bryant v. City of New York***, 404 F.3d 128, 135 (2d Cir. 2005)(citation omitted)

The "touchstone of due process" is protection from the exercise of power without any reasonable justification in service of a legitimate governmental objective." ***Edrei v. Maguire***, 892 F.3d 525, 535 (2d Cir. 2018)(citation omitted)

"[T]he central inquiry has always been whether the government action was rationally related to a legitimate government objective." ***Id***., at 536

"A plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense.'" ***O'Connor v. Pierson***, 426 F.3d 187, 203 (2d Cir. 2005)(citation omitted)

This standard is most readily satisfied when conduct is 'intended to injure in some way unjustifiable by any government interest.'" ***Edrei***, 892 F.3d at 533

"[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." ***O'Connor v. Pierson***, 426 F.3d 187, 203 (2d Cir. 2005)

40

"The exact degree of wrongfulness necessary to reach the conscience-shocking level will depend upon the circumstances of a particular case and may range from deliberate indifference to actual intent to cause harm." ***Steele v. Cicchi***, 855 F.3d 494, 502-03 (3d Cir. 2017)

"While authority in this Circuit is sparse, other federal courts of appeals have recognized that the fixing of bail gives rise to a liberty interest in paying bail that is protected by substantive due process . . . Similarly, other federal courts have generally used the rubric of substantive due process to analyze claims based on the delayed release of pre-trial detainees after the legal basis for detention has dissolved." ***Lynch v. City of New York***, 335 F.Supp.3d 645, 653 (S.D.N.Y. 2018)(citations omitted)

"To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or property interest, (2) upon which defendants have infringed in an arbitrary or irrational manner." ***Lynch***, at 654 (citation omitted)

The ***Lynch*** court held "Plaintiffs adequately allege that their interest in paying bail and being released after paying bail has been infringed by the City's deliberate indifference." ***Id***., at 654 "At this stage of the litigation and especially given the primacy of the right to be free from bodily restraint, Plaintiffs plausibly allege that the City acted with deliberate indifference." ***Id***., at 655

This is not a deliberate indifference case, but rather one of intentional, purposeful, arbitrary unlawful conduct. ECF No. 7, at 17 ¶¶ 79-83; ***id***., at 15-16 ¶¶ 70-75; ECF No. 66-1, at 1 ¶ 2

In ***O'Connor***, the plaintiff alleged that the defendant "violated his 'substantive rights to privacy and to be free from arbitrary governmental action' by re-

questing access to his medical records." *Id*., 426 F.3d at 200

The Court refers to the right to privacy as "a type of liberty interest." *Id*. But it is not the same sort of "substantive due process liability in situations where the government owes a special duty of care to those in its charge." *Id*., at 203

In *O'Connor,* the Court held that "we do not believe that whether the [defendant's] actions were conscience-shocking can be decided at the summary judgment stage. The primary issue is the state of mind of the [defendant] and its agent . . . If the [defendant] intended to injure or spite [the plaintiff], . . . that intent would plainly support liability in light of *County of Sacramento*. To uphold summary judgment for the Board, we would have to conclude definitively that the Board acted without culpable intent toward O'Connor. We cannot do so, because the evidence supports reasonable inferences, which at this stage must be drawn in [plaintiff's] favor, that cast doubt on the [defendant's] motives." *Id*., 426 F.3d at 203

None of the four non-search Deputies came forward with any evidence to challenge my plausible factual showing as to the unconstitutionality of their arbirary and rationally unjustified two-hour delay in releasing me after they all clearly knew my bail had been paid.

"'Certainly, [the court] cannot determine reasonableness as a matter of law when defendant has offered only a general assertion that certain steps must be completed prior to release, and provided no explanation as to why those steps are necessary or why they take a particular time to complete.'" *Berry v. Baca*, 379 F.3d 764, 770-71 (9th Cir. 2004)(citation omitted)

*See also Pesola v. City of New York*, No. 15-CV-1917 (PKC)(SN), at 20,

42

2016 WL 1267797, at *9 (S.D.N.Y. Mar. 30, 2016)(justifications for delay in re-

leasing detainee not apparent from the record may not be considered on motion to

dismiss)

In **Goldberg v. Hennepin Cty.**, 417 F.3d 808, 812 (8th Cir. 2005), "the

County presented evidence describing the relevant procedures, the approximate

time it takes to process individuals through the pretrial detention system, and the

temporary problems with a new computer system . . ."    No such evidence was

produced here.

Under CPL §§ 160.10(1), (2), (3), the Deputies had no lawful authority to

either fingerprint me or take my mug shot in the first place.   The underlying mis-

demeanor was under Executive Law § 362(2) and there was no question as to my

identity when I got to the Jail.  Statutory Addendum II (**infra**, at 67);  ECF  No.

75, at 7 ¶ 33

"[E]ven a thirty-minute detention after being ordered released could work

a violation of a prisoner's rights under the Fourteenth Amendment." **Davis v. Hall**,

375 F.3d 703, 713 (8th Cir. 2004)

"The issue here is not the number of hours Plaintiff was detained, but wheth-

er her detention was delayed unreasonably . . .  and [t]he question . . . is one of in-

tent . . . for the trier of fact."   **Case v. City of New York**, 233 F.Supp.3d 372, 387

(S.D.N.Y. 2017)(citation and internal quotation marks omitted)

"What is a reasonable time or detaining a prisoner in custody is a question

best left open for juries to answer based on the facts presented in each case." **Le-

wis v. O'Grady**, 853 F.2d 1366, 1370 (7th Cir. 1988)

It is respectfully submitted that none of the Deputies are entitled to summary

judgment on the substantive due process issue.

### E. The Two-Hour Delay in Releasing Me after my Bail was Paid was Objectively Unreasonable and Violated my Rights under the Fourth Amendment

"The Fourth Amendment . . . establishes the standards and procedures governing pretrial detention." *Manuel v. City of Joliet*, 1237 S.Ct. 911, 914 (2017)

"[I]t is well established that the Fourth Amendment governs the procedures applied during some period following an arrest." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)(citations omitted)

The Fourth Amendment test of reasonableness is one of "objective reasonableness." *Id*.

"Needless delay, or delay for delay's sake – or worse, delay deliberately created so that the process becomes the punishment – violates the fourth amendment." *Portis v. City of Chicago*, 613 F.3d 702, 705 (7ᵗʰ Cir. 2010)(citing *McLaughlin*, 500 U.S. at 56)

In *McNeil v. Dir., Patuxent Inst*., 407 U.S. 245, 246 (1972), an inmate was sentenced to five years' imprisonment - which he served. The State claimed "he has refused to cooperate with the examining psychiatrists; . . . [and] "consequently he may be confined indefinitely until he cooperates and the institution has succeeded in making its evaluation."

The inmate claimed "that when his sentence expired, the State lost its power

44

to hold him, and that his continued detention violates his rights under the Fourth Amendment." *Id*.

"We agree," said the Justices unanimously. *Id*.

I plausibly alleged that the two-hour delay in releasing me was bottomed in the intent of punishing me – whether for the "fuss" Barbara made or my repeated demands to be released because my bail had been paid or some combination of the two (or something else).

None of the four non-search Deputies came forward with any evidence to challenge my plausible factual showing on this point. Nor does Washburn.

"It is premature to say how long is too long under the fourth amendment . . . [T]he police should explain what must be done after an arrest . . . and why reasonably diligent officers need more than four hours to do it." *Gramenos v. Jewel Cos., Inc*., 797 F.2d 432, 437 (7th Cir. 1986)

Generally, whether the delay in releasing a detainee is objectively unreasonable is a question of fact for the jury. *Sorensen v. City of N.Y.*, 2003 WL 169775, at *4 (S.D.N.Y. Jan. 23, 2003), *aff'd in part, appeal dismissed in part*, 413 F.3d 292 (2d Cir. 2005)

*See also Gonzalez v. Bratton*, 147 F.Supp.2d 180, 199 (S.D.N.Y. 2001)(record contained sufficient evidence to support plaintiff's claim that "any excessiveness in her detention was motivated by [defendant's] ill-will").

*And Hartline*, 546 F.3d at 103: "Hartline appears to have been confined solely for the purpose of being strip searched."

"'[T]here may be some set of facts brought out in discovery . . . that makes each delay appear reasonable, . . . [a]t this early stage and on the facts alleged, [the

45

plaintiffs'] excessive detention claims cannot be dismissed.'" ***Roland v. City of New York***, No. 19-CV-2240(PKC)(SMG), at 6 (E.D.N.Y. Jun. 4, 2019)(citation omitted)

Put another way, there is here – at the very least – a reasonably disputable question of fact as to just how long I could objectively reasonably be "compelled to await the grace of a Dickensian bureaucratic machine" before my release was "effectuated." ***McLaughlin*** 500 U.S. at 71 (Scalia, J. dissenting); Doc. No. 66-7, at 2 ¶ 6 (Washburn's Affidavit)

Objective unreasonableness under the Fourth Amendment is a lower bar to hurdle than the conscience-shocking bar of the Fourteenth. On this record, I respectfully submit I am entitled to summary judgment that the two-hour delay in releasing me - after my bail was paid and the Deputies knew this - was objectively unreasonable and violated the Fourth Amendment.


## III


## THE COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE PERSONAL INVOLVEMENT OF THE DEPUTIES BECAUSE DISPUTABLE QUESTIONS OF MATERIAL FACT ARE PRESENTED

All five Deputies were "personally and directly involved with, and responsible for, the unlawful" and unconstitutional acts committed while [I] was held in [] custody . . . at the Chemung County Jail." ECF No. 7, at 14-15 ¶ 69; ECF No. 75, at 30-31; *id*., at 42-43

I identified by name all five Deputies present in the small reception area of the Jail during the two hours I was confined there. They all heard me complaining that I was not being released after my bail was paid. They heard Gunderman say "your bail is sitting out there" and "we've gotta cut you loose" or "we're gonna cut you loose." ***See, e.g., Davis v. Hall,*** 375 F.3d 703, 714 (8th Cir. 2004).

"[W]hatever haziness obscures the exact contours of a duty to investigate burns off once the authorities ***know*** they have no basis for detention." ***Garcia v. City of Chicago***, 24 F.3d 966, 974 (7th Cir. 1994)(Cudahy, J., concurring in part and dissenting in part)(emphasis in original)

"This was a traumatic time for me, a traumatic experience. I was in shock the whole time I was there." ECF No. 66-4, at 64:17-19 So I was later able to identify specifically only Gunderman and Washburn. ***Id***., at 64:6-14; ***id***., at 83:7-25; ***id***., at 84:1-3; ECF No. 75, at 49

"At least the plaintiff in th[is] situation knows who all of the police officers are. They are all potentially liable and a jury can sort out their respective roles if it accepts the plaintiff's story." ***Rasmussen v. City of New York***, 766 F.Supp.2d 399, 412 (E.D.N.Y. 2011)

"[D]efendants' testimony that they were in close proximity to the incident was sufficient to present a genuine issue of material fact as to whether each of the individual officers was personally involved . . ." ***Vesterhalt v. City of New York***, 667 F.Supp.2d 292, 298 (S.D.N.Y. 2009)

"Because 'personal involvement is a question of fact[,] we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law.'" ***Farrell***

47

***v. Burke,*** 449 F.3d 470, 484 (2d Cir. 2006)(citation omitted)

None of the four non-search Deputies came forward with any evidence to challenge my plausible factual account regarding their personal involvement and role in the unlawful delay in releasing me. Nor does Washburn – other than with unfounded ***ipse dixit*** assertions about the sanctity of the "booking process."

"If one may thus reserve one's evidence when faced with a motion for summary judgment, there would be little opportunity 'to pierce the allegations of the pleadings' or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then then generally avail himself of this means of delaying presentation of his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions." ***Engl v. Aetna Life Ins. Co***., 139 F.2d 469, 473 (2d Cir. 1943)

It is respectfully submitted that the above reasoning should apply with no less, arguably greater, force where, as here, it is the party seeking summary judgment that fails to come forward with any evidence to support its claims.

***See also Bobbitt v. Marzan,*** No. 16-CV-2042 (AT), at 20 (S.D.N.Y. Sept. 21, 2020)(Defendants have "have not put forward any other evidence suggesting that Paolicelli or Daley were not involved in the search. Accordingly, Plaintiff is entitled to summary judgment on the questions of whether Paolicelli conducted the search at issue and whether Daley ordered it.")

At the very least, a reasonably disputable question of fact exists regarding this issue, so none of the Deputies are entitled to summary judgment. Indeed, on this record, I respectfully submit I am.

## THE NON-SEARCH DEPUTIES ARE LIABLE FOR THEIR INEXCUSABLE FAILURE TO INTERVENE TO PREVENT THE UNLAWFUL VISUAL BODY CAVITY SEARCH BY WASHBURN

Officers "have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observed or has reason to know . . . that excessive force is being used." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)(citations omitted)

"[A] plaintiff may still prove personal liability under § 1983 by showing that the defendants 'permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights.'" *Gonzalez v. Waterbury Police Dept.,* 199 F.Supp.3d 616, 622 (D.Conn. 2016)(citation omitted)

Admittedly, "'[t]he mere fact that [an] [o]fficer was present during the entire incident does not, on its own, that he had either awareness of excessive force being used or an opportunity to prevent it.'" *Piper v. City of Elmira*, 12 F.Supp.3d 577, 596 (W.D.N.Y. 2014)(citation omitted)

In *Piper*, the four plaintiffs sued ten Elmira police officers. As to six of the officers, the court found "[t]here is no evidence in the record . . . as to the location of these officers at the scene, much less evidence that these officers were in a position from which they could have intervened during the challenged uses of force."

*Id.*, at 596-97   The court granted their motion for summary judgment.  *Id.*, at 597

        As to the other four officers, the court explains "[t]o withstand summary judgment, it is sufficient that plaintiffs have established that these officers were present during these incidents;  they need not establish which officers used the challenged force and which allegedly failed to intervene."  *Id.*, at 597 (citation omitted)

        "Even officers who did not actively participate in a strip search may still be found liable for a failure to intervene if they had a reasonable opportunity to do so."  ***Cotto v. City of Middletown***, 158 F.Supp.3d 67, 83 (D.Conn. 2016)

        This is not a situation in which the alleged unlawful conduct was "quick and isolated," thus depriving other officers present of a realistic opportunity to prevent the harm from occurring.        *See, e.g., **Gonzalez** v. **Waterbury Police Dept.***, 199 F.Supp.3d 616, 623, 625 (D.Conn. 2016)

        "An officer can be liable for nonfeasance, 'where the officer is aware of the abuse and the duration of the episode is sufficient to permit of tacit collaboration.'"  ***Grider v. Bowling***, 785 F.3d 1248, 1253 (8th Cir. 2015)(citation omitted)

        All four non-search Deputies were present in this small "admissions area" of the Jail in the approximately one hour before Washburn did the visual body cavity search, even if they came and went.    They all knew my bail was paid an hour before the search.

        They heard me complaining about the unjustified delay in releasing me - as well as Washburn's retort:  "***He's*** not going anywhere.  ***He's*** going to sit in ***my*** jail for a while.  ECF No. 75, at 48

        The four non-search Deputies knew, or had reason to know, that Wash-

50

burn planned to perform an unlawful visual body cavity search.    One or more of them heard or saw him remove me from the holding cell for the obvious reason of performing it.

The four non-search Deputies knew, or should have known, why Washburn wanted to keep me "sit[ting] in [his] jail for a while."    In the one-hour time time frame at issue, each of them had a realistic opportunity to intervene on my behalf to prevent the unlawful harm to me.

None of them said or did a thing.

Defendants "knew or had reason to know about the incident of which [plaintiff] complains of and . . . despite such knowledge, took no steps to correct the situation. This 'permits an inference of acquiescence and personal involvement.'"  **Kee v. Hasty**, No. 01-CV-2123 (KMW)(DF), at 52 (S.D.N.Y. Apr. 14, 2004)(citation omitted)

"Whether an officer has sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." **Anderson v. Branen**, 17 F.3d 552, 557 (2d Cir. 1994)

"'Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'"  **Sloley,** 945 F.3d at 47 (citation omitted)

The factual showing I made plausibly alleged and showed the direct personal involvement of all five Deputies in all of the unconstitutional conduct complained of here – as well as the four non-search Deputies' culpable failure to intervene on my behalf to prevent Washburn from subjecting me to the unlawful search.

51

None of the four non-search Deputies came forward with any evidence to suggest that they were not personally involved in the unlawful actions complained of - or that their failure to intervene in the unlawful strip search was justified or reasonable.

The four non-search Deputies are not entitled to summary judgment on the issue as to their § 1983 liability for failure to intervene to present the unlawful visual body cavity search performed on me by Washburn.


V


## THE COURT ERRED IN DENYING MY MOTION FOR RELIEF UNDER RULE 56(d) AND IN DENYING MOTION FOR AN EXTENSION OF THE DISCOVERY DEADLINE UNDER RULE 16(b)(4)


I responded fully and in good faith to every pretrial discovery request propounded to me by every Defendant.   ECF No. 75, at 71-72

I answered fully and non-evasively every question put to me at my deposition. *Id.*, at 23, 78; ECF No. 66-4, at 7-93

In the Rule 34 Document Production Requests I propounded to Washburn, I requested:

> 6.  Any policy manuals, practice manuals, procedural manuals, guidelines, directives, policy statements, instructions, guides or the like, drafted, promulgated, generated, maintained, received, adopted or followed by the Chemung

52

County Sheriff's Department and/or Chemung County Jail, and its employees, in connection with the strip searches of individuals in the custody of that Department and/or Jail.

ECF No. 75, at 60

Washburn responded:

> Defendant objects to this Demand to the extent it is vague, ambiguous, overly broad, and unduly burdensome because it fails to specify a relevant time period and, as a result, imposes undue burden and expense in violation of the Federal Rules of Civil Procedure. Defendant further objects to this Demand to the extent it seeks documents and things outside the relevant time frame and scope for this action.
>
> Defendant further objects to this Demand to the extent it seeks documents that are not reasonably related to the subject matter of this action, that are not relevant to the claims and defenses asserted in this action, and that are not reasonably calculated to lead to the discovery of admissible evidence, in light of this Court's Decision and Order (ECF No. 4), dismissing the County of Chemung as a defendant in this action. *Id*., at 60-61

As earlier mentioned (***supra***, at 37), I also requested a copy of "Post 1" cited in the "Strip Search Justification Sheet" (ECF No. 66-8, at 2). ECF No. 75, at 60. I didn't get that either. ***Id***.

Those two documents were the centerpiece of the Deputies' motion for summary judgment. *Id*., at 61;  ECF No. 66-9, at 2-9

"The County Defendants and their lawyers have exclusive possession, control and/or access to the information and evidence that is the very hinge of their motion for summary judgment."  ECF No. 75, at 46

"To all practical intents and purposes, there has been no discovery in this case – at least for [me]."  *Id*., at 75   My request for relief under Rule 56 (d) was "not really a request for *more* discovery, but [rather] *some* discovery." *Id*., at 81 (emphasis in original)

In my Declaration in Support of Relief Pursuant to Rule 56(d), I spelled out in detail the information and documents necessary to effectively oppose a motion for summary judgment.  ECF No. 75, at 66-76, *id*., at 78-85; *id*., *at* 89-101

In that section of my papers, I cite at least forty cases and five secondary authorities.

If the Court determines that the Deputies have met their burden under Rule 56(a), I respectfully submit their motion should be denied under Rule 56(d).

Admittedly, there is an incongruity in opposing a motion for summary judgment on the merits, on one hand, and cross-moving for relief under Rule 56(d), on the other.   At the time I had to respond to Defendants' life-or-death motion, I was not as familiar with the applicable law as I now am.   I knew I needed discovery as to the matters detailed in my Declaration.

With a fuller understanding, I suppose I would have done things differently.

## **Conclusion**

It is respectfully submitted that the order and judgment of the district court granting summary judgment to Defendants-Appellees Gunderman, Washburn, Howe, Spencer and Strong should be reversed.

It is further respectfully submitted that the Plaintiff-Appellant should be granted judgment as a matter of law and summary judgment as to the following issues:

[a] either a strip search or visual body cavity search violated the Fourth Amendment;

[b] the search conducted at the Jail on June 5, 2014 was a visual body cavity search;

[c] Defendant-Appellee William Washburn performed the search;

[d] the two-hour delay in releasing Plaintiff-Appellant violated the Fourth Amendment; and

[e] all five Defendants-Appellants are liable based on their personal involvement in the unlawful overdetention.

Date: July 22, 2022

Respectfully submitted,

/s/ *Christopher Murphy*

Christopher M. Murphy

Plaintiff-Appellant, appearing ***pro se***

Residence and Post Office Address:

105 Geneva Street, Apartment 237

Bath, New York 14810

Telephone: (607) 664-6717

christophermwmurphy@juno.com

christophermurphy@netzero.com

# Addendum (State Statutory Provisions)

N.Y. Criminal Procedure Law Sec. 520.15(1)(Addendum I). . . . . . . . . . 58

N.Y. Criminal Procedure Law Sec. 160.10(1)(Addendum II) . . . . . . . . . 59

# **Addendum I**

New York Criminal Procedure Law § 520.15(1) states:

> Where a court has fixed bail pursuant to subdivision two of section 520.10, at any time after the principal has been committed to the custody of the sheriff pending the posting thereof, cash bail in the amount designated in the order fixing bail may be posted even though such bail was not specified in the order. Cash bail may be deposited with (a) the county treasurer of the county in which the criminal action or proceeding is pending or, in the City of New York with the commissioner of finance, or (b) the court which issued such order, or (c) the sheriff in whose custody the principal has been committed. Upon proof of the deposit of the designated amount the principal must be forthwith released from custody.

# Addendum II

New York Criminal Procedure Law § 160.10(1) states:

   (1) Following an arrest, or following the arraignment upon a local criminal court accusatory instrument of a defendant whose court appearance has been secured by a summons or an appearance ticket under circumstances described in sections 130.60 and 150.70, the arresting officer or other appropriate police officer or agency must take or cause to be taken the fingerprints of the arrested person or defendant if an offense which is the subject of an arrest or which is charged in the accusatory instrument filed is:

   (a) A felony; or

   (b) A misdemeanor defined in the penal law; or

   (c) A misdemeanor defined outside the penal law which would constitute a felony if such person had a previous judgment of conviction for a crime; or

   (d) Loitering, as defined in subdivision two of section 240.35 of the penal law; or

   (e) Loitering for the purpose of engaging in a prostitution offense as defined in subdivision two of section 240.37 of the penal law.

   (2) In addition, a police officer who makes an arrest for any offense, either with or without a warrant, may take

or cause to be taken the fingerprints of such person if such police officer:

(a) Is unable to ascertain such person's identity; or

(b) Reasonably suspects that the identification given by such person is not accurate; or

(c) Reasonably suspects that such person is being sought by law enforcement officials for the commission of some other offense.

(3) Whenever fingerprints are required to be taken pursuant to subdivision one or permitted to be taken pursuant to subdivision two, the photograph and palmprints of the arrested person or defendant, as the case may be, may also be taken.

## Certificate of Compliance

 This proposed brief contains 13,883 words, exclusive of those portions excluded by Fed.R.App.P. 32(a)(7)(B)(iii), and thus complies with the 14,000-word limit imposed by Local Rule 32.1(a)(4)(A).

 It complies with the typeface and type-style requirements of Fed.R.App. P. 32(a)(5), (6), because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2013 in Times New Roman 14-point font.

Date: July 22, 2022

    Signed,

    /s/ *Christopher Murphy*

    Christopher M. Murphy

## Certificate of Service

I declare under penalty of perjury that a true copy of the within pro-
posed brief was electronically served on and sent to the following individuals
at the following email addresses on July 22, 2022:

Paul A. Sanders, Esq.    psanders@barclaydamon.com

Bryan J. Maggs, Esq.   bryan@maggslaw.com

Date: July 22, 2022

Signed,

/s/ *Christopher Murphy*

Christopher M. Murphy